BARRON, ordinary, <em>v.</em> TERRELL, solicitor-general.

Under the Penal Code, § 1097, the fund arising from the hire of misdemeanor convicts shall be first applied to the payment of the fees of the officers of court.   This application is to be made by first taking from the hire the costs in the particular cases, including the fees of witnesses; then discharging the orders of the officers of court for insolvent costs in other cases, and paying into the county treasury whatever balance may remain.

Argued January 26,—Decided February 21, 1906.

Mandamus.   Before Judge Freeman.   Carroll superior court. December 11, 1905.

*R. D. Jackson,* for plaintiff in error.

*S. W. Harris* and *W. F. Brown,* contra.

Evans, J.   The sole question presented by this record involves a construction of section 1097 of the Penal Code: "When a county hires out convicts, the money received as compensation for their labor shall be applied to the payment of the fees of the officers of court, including justices and constables who rendered services in such cases, and to the witnesses' fees, and the balance shall be paid into the county treasury for county purposes."   The contention of the plaintiff in error is, that when the county authorities come into possession of a fund arising from the hire of convicts in any county, from this fund shall first be deducted the fees of the officers of court, including justices and constables, and the witnesses' fees in the particular case, and whatever balance remains after payment of the fees in the particular case shall be paid into the county treasury for county purposes, and that the lien of the officers of court for insolvent costs does not attach to such balance.   The defendant in

error, on the other hand, contends that, in the distribution of money arising from the hire of misdemeanor convicts, the officers rendering services in such cases are entitled to have not only their fees, which arise in the case of the convict whose labor produces the money, paid from the fund, but that they are entitled to have any fees that may arise in any other case, and may be due as insolvent costs under a duly approved order, also paid before the county has any claim whatever upon the fund.

Prior to the passage of the act approved October 16, 1891, which is codified in Penal Code, § 1097, the insolvent costs of the officers of court were paid from the fund arising from the collection of fines and the forfeiture of recognizances, after deduction of the costs in the particular cases. Under the act of 1874, as codified in section 4814 of the Code of 1882, the county authorities were authorized to hire out misdemeanor convicts upon such terms and restrictions as may subserve the ends of justice. It was held by this court that the fund arising from the hire of misdemeanor convicts under this code section could not be applied by a solicitor-general to the payment of his insolvent costs, whether the costs accrued in the particular case in which the conviction was had or in other insolvent cases. *Black* v. *Fite,* 88 *Ga.* 238. While this case was pending in the Supreme Court, and before its adjudication, the act of 1891, codified in Penal Code, § 1097, was passed, and while the court adverted to the act, it was held that the act did not apply in cases originating before its passage. The codifiers embraced this act of 1891 in that article of the Penal Code which provided for the compensation of officers of court. The effect of the act adopting the present code was to enact into one statute all the provisions embraced in the code. *Central R. Co.* v. *State,* 104 *Ga.* 831. And in construing any section of the code, we must treat it as a single statute forming one homogeneous and consistent body of laws, and each code section is to be considered in explaining and elucidating every other part of the common system to which it belongs. Inasmuch as the act of 1891 deals with the compensation of officers of court, it is to be construed as in pari materia with the other sections contained in that article of the Penal Code. *Mitchell* v. *Long,* 74 *Ga.* 98. In those cases where a defendant convicted of a misdemeanor has been fined and has paid the fine, no officer of the court shall be required to pay into the treasury any such money

until all legal claims on such funds held and owned by the officers bringing the money into court, and the costs due the justices and constables in the particular case by which the funds for distribution were brought into court, shall have been allowed and paid. Penal Code, §1089. "The scheme of the law is that the solicitor-general should pay himself his own fees, and also pay the fees of the other officers of the court and of the justices of the peace and constables in the particular cases by which the funds are brought into court, and to his immediate predecessor such moneys as may be due him in cases commenced by him while in office. When this is done, if there be any surplus in his hands, the solicitor-general is required to settle with the county treasurer by paying such surplus over to that officer at the time designated by the code." *Bartlett* v. *Brunson,* 115 *Ga.* 459. It was the evident purpose of the legislature to afford additional compensation to the officers of court by the appropriation of the misdemeanor convict hire to the payment of their fees. If by a narrow construction of this section we should hold that only the fees in the particular case are to be paid over by the county authorities to the officers of court, on receiving the convict hire, and the balance paid into the county treasury to be used for county purposes, we will be ascribing to the legislature a mode of disposition of a fund arising from the hire of convicts different from that of one arising from the payment of fines. It is clear that money in the hands of the officers of court after the payment of the costs in a particular case out of the fine imposed is not to be paid over to the county treasurer until all the insolvent orders of these officers have been first liquidated. The balance thus paid does not belong to the general fund of the county, but is subject to disbursement upon the insolvent orders of all officers in the order of their priority. Why, then, should this fund from the hire of convicts be treated differently, and only the costs in the particular case be paid out of it? If it can be gathered "from a subsequent statute in pari materia what meaning the legislature attached to the words of a former statute, this will amount to a legislative declaration of its meaning and will govern the construction of the first statute." United States v. Freeman, 3 How. 556. By an act approved December 21, 1897, the General Assembly created a prison commission for the State of Georgia, and invested that commission not only with power over the felony convicts, but also placed the misde-

meanor convicts under its supervision; and by an amendment to that act, approved August 17, 1903, the authority of the commission over misdemeanor convicts was elaborately defined. See Acts of 1897, p. 71; Acts of 1903, p. 65. By the terms of this latter act, the commission was given general supervision over the misdemeanor convicts of the State; it was made the duty of the commissioners to make quarterly visits to the various camps where misdemeanor convicts were at work, and to advise with the county or municipal authorities working them in making or altering the rules for the government, control, and management of such convicts; and in case the commissioners and the county or municipal authorities failed to agree upon the government, control, and management of the convicts, then the Governor was authorized to prescribe such rules, and if the county or municipal authorities failed to comply therewith, the Governor and the prison commissioners were empowered to take the convicts from the county or municipal authorities and hire them to some other county or municipal authority willing to comply with the rules and regulations prescribed by the Governor. In disposing of the hire thus collected, the act expressly directed "the net proceeds to go into the treasury of the county, to be kept in the fines and forfeitures fund." Can any reason be surmised why the legislature should intend an appropriation of the convict hire under these circumstances different from the appropriation of the hire in cases where the convicts were hired out by the county authorities? This clear and unequivocal statement of the disposition to be made of the convict hire, when collected by the Governor and the prison commission under the act of 1903, clearly shows the legislative construction placed upon the act of 1897, as now embraced in the Penal Code, § 1097. It is admitted that where an act is clear and unambiguous as to its meaning, subsequent legislation upon the same subject will not affect the statute, except only as to its repugnancy. On the other hand, if the prior act is susceptible of two constructions, the subsequent act, under the authority of United States *v.* Freeman, supra, is controlling as to the meaning to be put upon it. This section (1097), in view of its location in the general chapter of the code dealing with the compensation of the officers of court, should be given the meaning evidently attached to it by the General Assembly when the act of 1903 was passed, inasmuch as the word "fees," construed in connection

with the context, creates a serious doubt whether it was intended to be limited to compensation for services in particular cases, or was to be understood as embracing fees earned by the officers of court in all cases which were included in an order for insolvent costs. We construe the section to mean that the fund arising from the hire of misdemeanor convicts shall be first applied to the particular fees and insolvent costs of the officers of court; this application to be made by first taking from the hire the costs in the particular cases, including the fees of witnesses, then discharging the claim of the officers of court for insolvent costs in all other cases, and paying into the county treasury whatever balance may remain.

The conclusions we have reached are not in conflict with what was decided in *Pulaski County* v. *DeLacy,* 114 *Ga.* 583. The question now presented for decision was not involved in that case.

*Judgment affirmed. All the Justices concur, except Atkinson, J., disqualified.*

---

The cases heretofore reported in which Justices Beck and Atkinson did not preside were argued before they came upon the bench of this court.