## RANDOLPH COUNTY v. ELLIS.

1. The petition failed to state a cause of action against the defendant, and the court committed no error in sustaining a general demurrer thereto.
2. Upon review, at request of counsel for plaintiff in error, of the cases of Barron v. Terrell, 124 Ga. 1077, and Sapp v. DeLacy, 127 Ga. 659, it is agreed that the rule there announced should be adhered to.

　　　Submitted July 1, 1907.—Decided February 8, 1908.

　Rule. Before Judge Wright. Randolph superior court. November 8, 1906.

*William D. Kiddoo*, for plaintiff.

*R. R. Arnold, J. B. Ridley,* and *Pottle & Glessner,* for defendant.

BECK, J. The plaintiff in this case, the County of Randolph, sued out a money rule against B. W. Ellis, as former clerk of the superior court of said county, seeking to recover a portion of the money received by said clerk from the funds arising from fines and forfeitures and the hire of misdemeanor convicts. The defendant demurred generally to the petition. The court sustained the demurrer and dismissed the petition. The plaintiff excepted. The petition alleges that the County of Randolph paid out for jail fees, during the years 1901 and 1902, the sum of $1,058.83, as follows: for prisoners who were convicted and paid fines, $242.75; for prisoners convicted and sentenced to work in the chain-gang, $591.23; and for prisoners convicted of felonies or acquitted, $222.85. And "petitioner alleges that it is entitled to its pro rata share of all fines collected . . with all the officers of court for said years." It is alleged that during the years 1901 and 1902 the clerk, sheriff, and solicitor-general collected $3,610 from fines imposed by the court, and that "by some agreement between the several officers named [the clerk, sheriff, and solicitor] the said B. W. Ellis received one fourth of said fine money, $902.50, as former clerk of said court, and is due petitioner said amount of said fine money subject to deduction of his proper costs." It is nowhere alleged that the clerk was not entitled to every cent that he received, either for fees in the particular cases, or for insolvent fees in other cases. The prayer of the petition is that the defendant be required to bring the money received by him into court, and in his answer set forth in detail the several amounts due to the defendant, the solicitor-general, and the sheriff for costs in the several cases, as well as insolvent costs accruing during the years 1901 and 1902, so that a proper distribution of the funds arising from fines and forfeitures can be made; and that "the rule be made absolute for the amount due petitioner," no amount being specified.

Section 1108 of the Penal Code provides that certain "jail fees" shall be paid to the jailor, and that "whenever jail fees are chargeable to the county, they shall be paid monthly." It is not alleged in this case, nor is there anything in the petition from which we could infer, that the county has paid to the jailor the

claims which the latter held against the funds arising from fines, forfeitures, and the hire of misdemeanor convicts, and that it is seeking to be subrogated to the rights of the jailor to participate in the distribution of those funds; even if the doctrine of subrogation could be invoked by a county which had paid to the jailor the fees as provided in the code section last referred to. The only inference that we can draw from the allegations of the petition is that the jail fees were chargeable to the county, and have been paid by it, as provided in §1108, and that the county now seeks to be reimbursed for such payments out of the said funds. The Penal Code, §1089, provides that "The officers of the several courts, including the prosecuting officers, shall pay into the county treasury of the county where such court is held all moneys arising from fines and forfeitures by them collected, and, on failure to do so, shall be subject to rule and attachment, as in cases of defaulting sheriffs. But no such officer shall be required to pay into the treasury, as aforesaid, any such moneys, until all the legal claims on such funds held and owned by said officer bringing the money into court, and the costs due the justices and constables in the particular case, by which the funds for distribution were brought into court, shall have been allowed and paid." And section 1090 further provides that "All such fines and forfeitures shall be, at each term of the court, distributed by the solicitor, under order of the court, to such persons and according to the priorities now prescribed by law; and on his failure to do so, he shall be subject to a rule at the instance of the party aggrieved." See, in this connection, *Bartlett* v. *Brunson*, 115 *Ga.* 459 (41 S. E. 601). "It is the duty of solicitors-general, when a prisoner has been tried and convicted and sentenced to pay a fine and the costs of the prosecution, to put in a bill of costs the jail fees, and to collect and pay the same over to the proper county officer." *Gordon* v. *Harris*, 81 *Ga.* 719 (8 S. E. 427). The Penal Code, §1085 et seq., provides that in cases where a bill of indictment is preferred and not found true by the grand jury, or where a defendant is acquitted by a jury, or where persons liable by law for the payment of costs are unable to pay the same, costs due to the officers of the court, and also to justices and constables, shall be paid out of money arising from fines, or collected on forfeited recognizances. But nowhere in the code do we find any law which

authorizes a county to present an insolvent bill of costs for jail fees, and to participate pro rata with the officers of court, justices, and constables in a distribution of the funds arising generally from fines and forfeitures. We are remitted, therefore, to the proposition that the jail fees must be collected in the particular case in which the prisoner was tried and sentenced to pay costs; and if for any reason the prisoner is not able to pay costs, or costs are not collected in that particular case, there is no provision in the law whereby the county can charge its jail fees to insolvent costs and participate in a division of the funds arising from fines and forfeitures collected in other cases. Under the law which we have quoted above, it was the duty of the solicitor-general, under order of the court, to distribute the money arising from fines and forfeitures to such persons as were entitled to receive it, and according to the priorities prescribed by law. It is not alleged that the solicitor-general did not act in good faith in distributing the funds; or that the clerk was guilty of any fraud, misrepresentation, or concealment when he received his share. It is to be presumed, therefore, that the clerk had a legal claim to all of the funds received by him. And if the solicitor-general either inadvertently or by mistake failed to put the jail fees into the bill of costs, or failed to pay over the same to the proper county officer, it may be that the county would have a remedy against the solicitor-general; but the remedy is not a money rule against the clerk, which fails to charge the latter with having received any money arising from the fines collected to which he was not legally entitled.

It is alleged that during the years 1901 and 1902, there was collected, from the hire of misdemeanor convicts sentenced in the superior court of Randolph county, the sum of $4,540, "of which sum the said B. W. Ellis, as former clerk of said court, received the sum of $1,038.50. . . Petitioner alleges that all of the costs, including jail fees, must be paid, if the fund be sufficient, out of the fine and forfeiture fund, before any portion of the hire can be applied to any costs whatever, except to such balances as may be due of costs in the particular cases of convicts hired out, after applying the fine and forfeiture funds to said costs; and petitioner alleges that the said B. W. Ellis, as former clerk of said court, owes to and refuses to pay your petitioner the sum of $1,-038.50, the aggregate amount of said convict hire received by him."

The Penal Code, §1097, provides that, "When a county hires out. convicts, the money received as compensation for their labor shall be applied to the payment of the fees, of the officers of court, in- cluding justices and constables who rendered services in such cases, and to the witnesses' fees, and the balance shall be paid into the county treasury for county purposes." In the case of *Barron* v. *Terrell,* 124 *Ga.* 1077 (53 S. E. 181), it was decided that, "Under the Penal Code, §1097, the fund arising from the hire of misde- meanor convicts shall be first applied to the payment of the fees of the officers of court. This application is to be made by taking from the hire the costs in the particular cases, including the fees. of witnesses; then discharging the orders of the officers of court for insolvent costs in other cases, and paying into the county treas- ury whatever balance may remain." And in the case of *Sapp* v. *DeLacy,* 127 *Ga.* 659 (56 S. E. 754), it was held that "Under the law the county authorities, whether the ordinary or the board of county commissioners, are invested with full authority to lease and hire out misdemeanor convicts, and receive and disburse all the funds arising as compensation for the services of the convicts." The question is presented in this connection whether, in disburs- ing the funds derived from the hire of convicts, the county au- thorities should pay the jail fees incurred by the county in the cases of the convicts hired. The Penal Code, §1097, provides that. the funds arising from the labor of convicts "shall be applied to the payment of the fees of the officers of court, including justices. and constables who rendered services in such cases, and to the witnesses' fees, and the balance shall be paid into the county treas- ury for county purposes." There is no provision in this statute that authorizes the county authorities to pay the jail fees, which are chargeable to the county, out of the funds arising from the labor of convicts. The statute expressly enumerates the persons. entitled to be paid out of said fund, to wit: the officers of court, justices, constables, and witnesses,—the county taking whatever remains. And upon the principle that "Expressio unius est ex- clusio alterius," we are constrained to hold that jail fees due the county are not to be paid out of this fund, and that the county has no interest in this fund unless a balance remains after the payment of the fees of the officers named, and the fees of the wit- nesses in the particular cases, in which event such balance must,

be paid into the county treasury and become county funds. "Under the mandate of [section 1097] of the code it becomes the official duty of the county commissioners or other proper authorities to apply the money which they receive from the hire of misdemeanor convicts to the payment of the fees of the officers named, and to the fees of the witnesses in the particular cases. No part of the money received from such hire becomes public funds of the county, nor has the county any interest in the same, unless after such payment a balance remains, and only such balance can lawfully be paid into the treasury and become county funds." *Sapp* v. *De-Lacy,* supra. Assuming, as we are bound to do in the absence of any allegation to the contrary, that the county authorities disbursed the funds arising from the labor of the convicts, in the manner prescribed by law, to such persons as held and owned lawful claims on such funds, the petition fails entirely to show that the clerk, the defendant in this case, received any money from the funds arising from the labor of convicts, to which he was not lawfully entitled, or that, after such payments, any balance would remain to be paid into the county treasury.

The petition also alleges that during the year 1901, the bond of a certain defendant named Thomas, for the amount of $50, was by rule absolute finally forfeited, and, although the surety on said bond is abundantly solvent, the said B. W. Ellis, clerk, has failed to issue an execution for the collection of the same, "whereby the said B. W. Ellis, as former clerk, became liable for said sum of $50, and in any distribution of the funds collected by him he should be charged with said sum; . . and petitioner alleges that the said B. W. Ellis, as former clerk of said court, owes to and refuses to pay your petitioner . . the sum of $50 for failure to issue execution and collect the forfeiture described."

Under the provisions of the code, sections 1085 et seq., the county has no interest in the money collected from forfeited recognizances until after all the legal claims on such funds held and owned by officers bringing the money into court, including justices and constables, shall have been allowed and paid. It is not alleged in the petition that after such payments out of the money arising from the forfeited recognizance of said Thomas any balance would remain to be paid into the treasury and become county funds. It does not appear, therefore, that the county has any in-

terest in the money due upon said forfeited recognizance. We do not mean to say that if the clerk failed or refused to issue execution upon the rule absolute forfeiting said bond, there is no way to compel him to do so; but we are clear that the procedure is not by a money rule instituted by the county, when it is not shown that the county has any interest in the fund which the clerk is called upon by the rule to bring into court.

In our opinion the allegations made in the petition do not show a cause of action against the defendant, and the court did not err in sustaining a general demurrer.

2. Counsel for plaintiff in error requests that the cases of *Barron* v. *Terrell*, 124 *Ga.* 1077 (53 S. E. 181), and *Sapp* v. *DeLacy*, 127 *Ga.* 659 (56 S. E. 754), be reviewed. But after considering the principle of law announced in the two cases just referred to, we can see no good reason for reversing the same; and it is agreed that the rule there stated should be adhered to.

*Judgment affirmed.. All the Justices concur, except Holden, J., who did not preside.*