*J. H. Hall* and *Middlebrook, Rogers & Knox,* contra.

---

## COMMISSIONERS OF McINTOSH COUNTY *v.* KENAN.

Where money arising from the hire of convicts is, by the county authorities upon whom rests the duty of hiring such convicts and disbursing the funds arising therefrom, paid over to the county treasurer, the latter has the right to assume that all liens in favor of officers of the court have been discharged; and where such funds have been received by him for general purposes and have been paid out under authority of ·law, the officers of court are not entitled to the writ of mandamus to compel the county commissioners to approve a general voucher in favor of such officers upon the county treasury for an amount equal to the amount of the funds received from the hire of convicts, less the costs paid out by the county authorities in the particular cases, although such officers have insolvent cost bills duly approved for an amount in excess of that sought to be recovered.

FEBRUARY 24, 1911.

Mandamus.  Before Judge Seabrook.  McIntosh superior court. February 19, 1910.

*C. M. Tyson,* for plaintiffs in error.  *J. E. Pottle,* contra.

BECK, J.  The plaintiff, alleging that he had held the office of solicitor-general of the Atlantic judicial circuit, embracing the counties of Bryan, ·Effingham, Liberty, and McIntosh, from the first day of January, 1899, to the first day of January, 1907, brought a petition against the commissioners of McIntosh County, who, it was alleged, were charged with the duty of hiring out the misdemeanor convicts of said county and collecting and disbursing the funds received from the hire of such convicts; and prayed that a writ of mandamus issue, directed to the said commissioners, commanding and ordering them, in their official capacity, to approve a voucher in favor of petitioner upon the treasurer of McIntosh ' county for the amount that may appear to be due petitioner out of the funds alleged to have been received by the treasurer from the county commissioners from the hire of misdemeanor convicts.  In the petition are set out the names of several parties who were prosecuted to conviction by the petitioner during his term of office and

the amounts received from the hire of said convicts; and the peti-
tion shows further that a certain sum of money, the aggregate of the
hire of said convicts, was paid over to the county treasurer of
McIntosh county for general county purposes after having paid to
the officers of court only the actual costs accruing in each of said
cases. It is alleged that the plaintiff held, duly approved and
recorded, insolvent bills of costs largely in excess of said funds
turned over as aforesaid to the treasurer. Certain issues of fact
were raised by the answer of the commissioners. There was a
finding in favor of the plaintiff. A motion for a new trial was made
by the commissioners, and overruled; to which ruling they excepted.
The commissioners, before answering, demurred to the petition on
several grounds; the overruling of this demurrer is also excepted
to.

Under the view which we take of this case it is not necessary
for us to deal with the special questions which are raised by assign-
ments of error upon particular rulings of the court during the
trial and upon the demurrer which was filed. The plaintiff sought
a mandamus requiring the county commissioners to issue a general
voucher against the county funds in general. The question pre-
sented for decision is not as to whether the former solicitor-general
could properly demand payment out of the special fund arising
from the hire of convicts who had been prosecuted to conviction
by him, if there remained in the treasury any portion of such
special fund; and it is not necessary to decide or consider that
question, as the case was not tried on that theory. The plaintiff's
contention was that funds, after the deduction of the actual costs
in each particular case arising from the hire of convicts, were paid
into the treasury for general purposes, and that he is now entitled
to have his proportion of the entire amount so received from the
hire of convicts paid over to him upon his insolvent-cost bill.
While the jury found in this case, upon a specific question sub-
mitted to them, that a certain amount of the funds arising from
the hire of convicts should, at the time of the trial, have been in the
hands of the treasurer, as a matter of fact no part of the specific
funds, as shown by the uncontroverted and conclusive evidence, was
actually in the treasurer's hands, but all of it had been paid out.
The finding of the jury upon the question referred to means noth-
ing more than that if the treasurer had kept this money separate

and had not paid it out except upon officers' cost bills, the amount found would have been in the treasurer's hands. But, as was held in the case of *Sapp* v. *DeLacy,* 127 *Ga.* 659 (56 S. E. 754), the county authorities make the contracts for the hiring of convicts, and they collect the amount due on such contracts from the hire of them. The duty rested upon such county authorities to disburse the hire so collected in the manner prescribed by law, "and the manner prescribed by law is that laid down in the case of *Barron* v. *Terrell,* 124 *Ga.* 1077 (53 S. E. 181). After all legal claims against the funds in the hands of the county authorities have been paid, it becomes the duty of such authorities to pay the balance into the hands of the county treasurer. He receives such balance as county funds, and has authority to pay it out only under authority of law. When the county authorities pay over to a county treasurer any sum arising from the hire of convicts, the county treasurer has a right to assume that all liens in favor of officers of the court have been discharged. This necessarily results from the fact that the law imposes upon county authorities the duty to discharge all such liens before paying the fund to the county treasurer. We know of no law which requires a county treasurer, as a part of his official duty, to pay out on judgments in favor of the officers of court, for insolvent costs, funds in his hands paid over by the county authorities to him arising from the hire of convicts." When the treasurer of McIntosh county paid out, as a part of the funds in his hands for general purposes, under authority of the law, all the funds which had come into his hands from the county authorities, though they arose from the hire of convicts, the county officers, whatever might have been their rights to claim these funds and have them paid over upon their insolvent-cost bills, could not, after the funds had passed into the hands of the treasurer and by him been paid out, secure, by mandamus or otherwise, a general voucher against the treasurer for the payment of these funds upon such cost bills. A mandamus directing the county commissioners to issue such a general voucher would in effect be allowing the former solicitor-general to obtain a judgment against the county for an amount equal to that which the county commissioners by mandamus are required to issue the voucher for. And this the solicitor-general could not obtain by direct proceedings in a suit

against the county. *Pulaski County* v. *DeLacy,* 114 *Ga.* 583 (40 S. E. 741).

If the county officers, or the officer who is the plaintiff in the present case, had a lien against the funds arising from the hire of convicts and the county authorities charged with the duty of hiring the convicts and disbursing the funds arising from their hire failed or refused to recognize the officer's lien, he should have proceeded against the county authorities with reasonable promptness and before the money passed into the hands of the county treasurer, who had the right, when the funds reached his office, to assume that all liens thereon had been discharged, and that the amounts which came into the treasury of the county could legitimately be paid out as other county funds. At any rate, the officer should have moved before the funds became a part of the other county funds and subject to vouchers for general purposes. We do not think that after having delayed for more than a year the former solicitor-general could now set up a lien on funds arising from the hire of convicts, so as to make it effective against the general funds in the hands of the treasurer, when it is shown that all the funds arising from the hire of parties who had been prosecuted to conviction by him during his term of office had been paid out by the treasurer.

*Judgment reversed. All the Justices concur.*