## 5351.   JENKINS *v.* THE STATE.

1. Section 175 of the Penal Code creates a crime but provides no punishment for its commission.
2. In this State, "a crime or misdemeanor shall consist in the violation of a public law, in the commission of which there shall be a union or joint operation of act and intention, or criminal negligence." The punishment is not a part of the crime, but is simply a consequence of its commission.
3. The crime denounced by section 175 of the Penal Code, being one involving moral turpitude, conviction thereof deprives the offender of the right to register, vote, or hold an office of honor or trust in this State.
4. The authorities are in conflict as to whether at common law the plea of autrefois convict must set out a valid judgment of conviction, or

whether it is sufficient if a verdict of guilty on a valid indictment be shown. Under the practice prevailing in this State, it would seem that if the plea showed a valid verdict upon a good indictment, it would not be demurrable merely because it was not alleged that a valid judgment of conviction had been entered up on the verdict.

5. The principle of the common-law maxim, "Nemo debet vis vexari eadem caùsa," as applied to criminal prosecutions, has been expressed in our constitution in the following language: "No person shall be put in jeopardy of life or liberty more than once for the same offense, save on his own motion for new trial, after conviction, or in case of mistrial." Liberty, as here used, is not confined to detention of the person, but embraces every inalienable right of the citizen. It includes freedom of locomotion, freedom of contract, and freedom to do and perform all those things which are regarded as inalienable rights, and, as applied to male citizens who are otherwise qualified, it includes the right to vote and hold any office of honor or trust in this State.

6. It follows that where one has been convicted of a crime involving moral turpitude, with the consequent loss of the right to vote and hold office in this State, he is deprived of a liberty, within the meaning of the constitutional guaranty, and can not be again put on trial, under another indictment, charging an offense of the same nature, growing out of the same transaction, even though the first conviction did not subject him either to fine or imprisonment.

7. The foregoing is true notwithstanding, upon a direct bill of exceptions assigning error on the imposition of sentence upon the first indictment, the convict procured a decision in the reviewing court that the sentence imposed was illegal. Filing an objection to the imposition of sentence and securing a reversal of the judgment refusing to sustain the objection is neither within the letter nor within the spirit of the exception to the constitutional guaranty which denies the right to plead former jeopardy in case a new trial is procured by the convict on his own motion. A new trial is a re-examination of the facts in issue, and can not be had so long as the verdict remains unreversed.

DECIDED JANUARY 20, 1914.

Accusation of misdemeanor; from city court of Elberton—Judge Grogan. October 18, 1913.

*Pulliam Proffit,* for plaintiff in error.

*Boozer Payne, solicitor,* contra.

POTTLE, J. The plaintiff in error was convicted, and brought the case to a previous term of this court. At that time he made the point that the indictment was not a good indictment for larceny from the house under section 176 of the Penal Code, because it failed to allege that the goods were "privately" stolen. He contended that if the indictment was sustainable at all, it was good only under section 175, and that no penalty was provided by law for the violation of this section. Following the decision of the

Supreme Court in *Kimbrough* v. *State*, 101 *Ga.* 583 (29 S. E. 39), this court held that the indictment was good under section 175, though it omitted the word "privately," and that it could not be sustained under section 176. We held further that no penalty was prescribed for a violation of section 175, and that for this reason the court erred in overruling the objection of the accused to the imposition. of sentence. 13 *Ga. App.* 695 (79 S. E. 861). The effect of this decision was that the accused could be indicted and tried under section 175, but that he was not subject to be sentenced either for a felony or a misdemeanor. The questions then decided arose upon a demurrer to the indictment, and upon the overruling of an objection to the imposition of sentence as for a misdemeanor. After the decision just referred to was rendered, the plaintiff in error was arraigned under an indictment charging him with simple larceny, growing out of the transaction alleged in the first indictment. He pleaded the former conviction in bar of the prosecution. His plea was stricken on demurrer, and he excepted.

1. The question presented by the record is both novel and interesting, and is one of first impression in this State. Were it not for the decision of the Supreme Court in *Kimbrough* v. *State*, supra, we would be inclined to hold that section 175 of the Penal Code is merely definitive and was not intended to create an offense separate and distinct from larceny from the house as defined in section 176. That decision is, however, controlling authority and must be followed. It is there directly held that an indictment under section 175 is good, and that a violation of that section constitutes a crime. The crime thus created is not denominated a misdemeanor, and no felony punishment is prescribed. This being so, we were compelled to hold, when the question was presented to us in the former case, that the sentence imposed by the court on the former trial was illegal and should have been set aside.

2. In view of the decision in *Kimbrough* v. *State*, we need not enter into any metaphysical discussion of the question whether there can be such a thing as a crime unless some penalty is provided for the commission of the act claimed to be a crime. According to Blackstone, every person is bound in conscience not to do an act which is malum in se, and the doing of every such act is a crime, whether it is so declared or not. 1 Bl. Com. 56-58. In this State "a crime or misdemeanor shall consist in the violation of

a public law, in the commission of which there shall be a union or joint operation of act and intention, or criminal negligence." Penal Code, § 31. Our law, therefore, recognizes no crimes save such as consist in the violation of a public law. There are no common-law offenses in this State. It is to be noted, however, that under the code definition of a crime, neither the imposition of a fine nor sentence of imprisonment is essential to make the act a crime. Penalty is no part of the crime, but is simply a consequence of its commission. In some of the States penalty is an ingredient in the crime by express provision of law, but, as has been seen, this is not true in this State.

3. It being settled that the original indictment under section 175 charged a crime, and that crime being one involving moral turpitude, that is to say, a crime which is malum in se, there is a penalty attached to the commission of the act, notwithstanding it is not followed by either fine or imprisonment. By express provision of our law, a person convicted of larceny, unless pardoned, "shall not be permitted to register, vote, or hold an office or appointment of honor or trust in this State." Penal Code, § 1077. It will thus be seen that serious consequences in the way of punishment flow from the commission of the act, even though the offender may not be subject to either fine or imprisonment.

4. There seems to have been some doubt whether at the common law, under a plea of former conviction, it was necessary to set out the judgment of conviction, or whether it was sufficient to aver merely that a verdict of guilty had been rendered on an indictment which appeared on its face to be good. At common law the conviction was by verdict; and the prisoner was attainted by the judgment. The old plea of autrefois attaint has become obsolete, and the plea of autrefois convict is now employed in all cases where it is sought to plead former conviction. A number of the common-law authorities are collected and referred to by the Supreme Court of Connecticut in State v. Benham, 7 Conn. 414, from which this conflict appears. See also Bishop's New Criminal Law, § 1021 (3), where the author takes the view that there must be a valid judgment of conviction before the plea of autrefois convict will lie. We need not definitely decide whether a plea of former conviction which discloses a valid verdict of guilty would be subject to demurrer merely because it failed to allege that no judgment

had been entered up. It would seem, however, that under the practice in this State, it would be sufficient to show that a verdict of guilty had been returned on a valid indictment for an offense of a similar nature, growing out of the same transaction referred to in the second indictment.

5. The common-law maxim, "Nemo debet bis vexari pro eadem causa," as applied to criminal prosecutions, has been embodied in the constitution of the United States and in the constitutions of most of the States, in varying forms. It appears in the constitution of the United States in this language: "Nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb." The provision of our constitution is as follows: "No person shall be put in jeopardy of life or liberty more than once for the same offense, save on his own motion for a new trial, after conviction, or in case of mistrial." The several varying provisions of the constitutions have received substantially the same construction, and, generally speaking, the disposition of all the courts has been to construe the guaranty liberally in favor of one claiming its protection. The question is, was the accused in jeopardy of his liberty under the first indictment, and this question narrows itself into an inquiry as to whether the right to register and vote and hold office is a liberty within the meaning of the constitutional guaranty. In *Central Railroad Co.* v. *State,* 54 *Ga.* 401, the court referred to a franchise as being a particular privilege or right granted by a prince or sovereign to an individual or to a number of persons, and said that in this sense a franchise was a synonym for liberty. In *People* v. *Goodwin,* 18 Johnson (N. Y.), 188 (9 Am. D. 203), it was said that jeopardy of limb as used in the constitution of the United States meant deprivation of liberty, and had substantially the same meaning as the word "liberty" as used in the "due-process clause" of the Federal constitution. It would be giving too narrow a meaning to the word "liberty" to make it apply solely to freedom of locomotion. A State imprisons one of its citizens as a punishment for crime in order to enforce the deprivation of certain rights which inherently belong to the citizen. In this State a convict is deprived of certain of the rights of a citizen, but is allowed to retain certain others; for instance, he has absolute freedom of contract, and the right to dispose of his property by will, and generally retains the enjoyment of all his property rights. He is, however, de-

prived of most of his personal rights, and the State imprisons him in order to make sure that he will suffer this punishment. The actual imprisonment of his person is no more a deprivation of certain of his liberties than it would be if he was deprived of them in any other way. To deny a citizen the right to vote and the right to hold office is certainly a serious interference with his liberty. One of the most cherished rights of the citizen is the right to take part in the affairs of government, and if he be deprived of this, a right is destroyed which it took centuries to obtain. After conviction of any offense involving moral turpitude the law does not content itself with the mere declaration that the convict shall not have the liberty to vote or hold office, but it provides the machinery for the enforcement of this deprivation. It prevents the registrars from permitting him to register as a voter, and it prohibits the managers of an election from accepting his vote; and if elected to an office of honor or trust, he could be ousted by quo warranto. So it can not be doubted that where one is tried for an offense involving moral turpitude, these liberties of his are in jeopardy. No extended discussion of the word "liberty" need be entered upon. It includes freedom of contract, freedom to do all those things which are regarded as inalienable rights, and, as applied to a male citizen who is otherwise qualified, it includes the right to vote and hold any office of honor or trust in this State. Numerous decisions discussing this question may be found in 5 Words & Phrases, 4126.

6. As before remarked, the exact question before us has not been decided in this State, but we are not without direct authority upon the point. In Shepard v. People, 25 N. Y. 406, it was held: "The plea of autrefois convict is supported by proof of a lawful trial and verdict, or confession, on a sufficient indictment, though no judgment be given." Accordingly it was held that where a judgment was reversed for an illegal sentence upon a conviction in which there was no error, the prisoner must be discharged. In the opinion it was pointed out that under the common law one was convicted by the verdict of a jury, and attainted by the judgment of the court. In Kuckler v. People, 5 Parker's Cr. R. 212, the plaintiff in error was convicted of murder, and it appeared that the legislature had inadvertently repealed the statute prescribing the sentence and punishment for murder. He was put on trial again after the enactment of a statute fixing punishment, and his plea

of former jeopardy was held good, the court saying: "The prisoner could not be deprived of the benefit of that plea by the answer that the judgment pronounced on the conviction was illegal. It was no fault of his that the legislature had deprived him of his well-earned deserts—to be hanged; nor that the court, obedient to the letter of the act, pronounced the sentence it prescribed." After referring to the common-law maxim, and the provision of the New York constitution embodying that maxim, the court added: "It needs neither argument nor authority to show that these provisions are applicable to a case where, upon a regular trial, there has been a lawful conviction of a felony. They protect the prisoner from another trial; and the result, under the statute, is his absolute discharge." The case just referred to was decided by an intermediate court, but a similar conclusion was reached by the Court of Appeals of New York in the case of Hartung *v.* People, 26 N. Y. 167, 179. We quote as follows from the opinion in that case: "But where neither the indictment nor the trial was subject to any legal exception, but the conviction or judgment has failed of its natural effect by the interposition of the government or of the prosecution, it would be contrary to the spirit and intention of the rule, and of the constitutional provision in affirmance of it, if the accused could be subjected to another trial for the same offense; and, moreover, as it seems to me, it would be manifestly unjust and oppressive. If the legislature can authorize a second trial where there has been a conviction which has become ineffectual by its own interposition, it may do so when there has been an acquittal. The two cases fall within the same reason."

7. It is urged in behalf of the State that the exception under the constitutional guaranty, that it does not apply where a convict has obtained a new trial on his own motion, prevents the discharge of the prisoner in the present case. The reply to this is manifest. No motion for a new trial was made. The plaintiff in error acquiesced in the verdict against him, and filed a direct bill of exceptions complaining of the imposition of sentence. This was not within the spirit or reason of the exception, which must be strictly construed, and applies only to the award of a new trial on motion of the accused. A new trial is a re-examination of the facts in issue. Of course, if the accused had obtained a new trial,—that is to say, had the verdict of guilty been set aside on his own motion,—

the case would have stood as if it had never been tried.  The indict-
ment could have been nol prossed, and the accused could have been
arraigned under the second indictment.  In reply to the suggestion
that the rule invoked by the plaintiff in error is purely technical
and, tends to defeat substantial justice, we have only to say that it
is the law as we understand it, and that it is infinitely better for a
guilty man to escape than it is for the courts to lay down a rule
which would have the effect of depriving the citizens in general of
one of their constitutional guaranties.          *Judgment reversed.*