## 39318. BYINGTON v. THE STATE.

DECIDED JUNE 22, 1962—REHEARING DENIED JULY 5, 1962.

*Covington, Kilpatrick & Storey, J. S. Kilpatrick, Sell & Comer,* for plaintiff in error.

*Wayne W. Gammon, Solicitor,* contra.

FRANKUM, Judge. 1. On July 12, 1961, B. Grady Byington was convicted in the City Court of Polk County of the offense of barratry under an indictment which had been transferred to that court by the superior court of said county. The indictment charged that on the 4th day of July 1959, he did ". . .

seek out and propose to another person, to wit: Mrs. Betty Ann Queen, that she present and urge a suit in tort for the death of her husband, Jimmy D. Queen, against the Central of Georgia Railway Company. . ." (By the time of the trial Betty Ann Queen had remarried and was Betty Ann Doeg, however, for simplicity, we will refer to her as Betty Ann Queen.) The indictment was drawn under paragraph 3, Section 1, of Act No. 514 of the General Assembly, Ga. L. 1957, pp. 658, 659. This statute·was repealed by Ga. L. 1960, pp. 1135-1137, but the indictment alleges that the crime was committed on July 4, 1959. "All crimes shall be prosecuted and punished under the laws in force at the time of the commission thereof, notwithstanding the repeal of such laws before such trial takes place." *Code* § 26-103.

The caption of Act No. 514, Ga. L. 1957, pp. 658, 659, is as follows: "An Act to define, for the purposes of this Act, the crime of barratry; to define the crime of conspiracy to commit barratry and provide a penalty therefor; to define the terms used in this Act; to repeal conflicting laws; and for other purposes." The first sentence of Section 1 of the act is as follows: "For the purposes of this Act the crime of barratry is hereby defined· as any of the following:" Paragraph 3 of Section 1 of the act reads as follows: "Any person who· seeks out and proposes to another person that they present and urge a suit against another person, the State of Georgia, the United States or any other legal entity, shall be guilty of the crime of barratry." The crime defined in this part of the act was not designated as a felony, and no penalty was specifically fixed therein, or elsewhere in the act, for a violation of Section 1, paragraph 3 thereof. *Code* § 26-101 provides: "The term felony means an offense, for which the offender, on conviction, shall be liable to be punished by death or imprisonment in the penitentiary, and not otherwise. *Every other crime is a misdemeanor.*" (Emphasis ours.) Therefore, a violation of the law under which the defendant was indicted would have constituted a misdemeanor.

The General Assembly had full knowledge of this Code section when it passed the law under which the defendant was

indicted. *Spence v. Rowell,* 213 Ga. 145 (97 SE2d 350); *Harrison v. Walker,* 1 Ga. 32. Therefore, *Code* § 26-101 and the law under which the defendant was indicted, being laws on the subject of crime, must be construed with reference to each other, and when thus construed, the conclusion is necessarily reached that a violation of Section 1, paragraph 3 of Act No. 514, Ga. L. 1957, pp. 658, 659, constituted a misdemeanor punishable under the provisions of *Code Ann.* § 27-2506 (Ga. L. 1957, pp. 477, 482), which provides: "Except where otherwise provided, every crime declared to be a misdemeanor shall be punished by a fine not to exceed $1,000, confinement in the county or other jail not to exceed six months, to work on the public works in such public works camp or other appropriate institution under the jurisdiction of the State Board of Corrections not to exceed 12 months, any one or more of these punishments in the discretion of the trial judge."

The defendant contends that the decisions in *Johnson v. State,* 169 Ga. 814 (152 SE 76); *Hill v. State,* 53 Ga. 125; *Gibson v. State,* 38 Ga. 571; and *Jenkins v. State,* 13 Ga. App. 695 (79 SE 861); s.c., 14 Ga. App. 276 (80 SE 688), require a ruling that when a statute fails to specifically provide for punishment for a violation thereof, there can be no punishment imposed upon a conviction for the violation of such statute. But having reached the conclusion that under the statutory law of this State a penalty was fixed for a violation of the provision of law under which the defendant was convicted, these cases are not applicable. Of course, if there is anything in these cases in conflict with the statutory law, we are bound to follow the statutory law. *Huguley v. Huguley,* 204 Ga. 692 (51 SE2d 445); *Stein Steel &c. Co. v. Tate,* 94 Ga. App. 517 (95 SE2d 437).

By treating these statutes in pari materia to reach the conclusion that the offense described by the law under which the defendant was indicted was, by operation of law, declared to be a misdemeanor, we are following the clear policy of this State governing construction of statutory enactments. "And it is well settled in this jurisdiction that all statutes are presumed to be enacted by the legislature with full knowledge of the existing condition of the law and with reference to it; that they are

to be construed in connection and in harmony with the existing law; and that their meaning and effect will be determined in connection, not only with the common law and the Constitution, but also with reference to other statutes and the decisions of the courts." *Spencer v. Rowell,* 213 Ga. 145, 150, supra.

More specifically to the point, the Supreme Court stated in *Huntsinger v. State,* 200 Ga. 127, 130 (36 SE2d 92): "The first principle announced in the *Wright* case, supra, that statutes relating to the same subject-matter (in pari materia) should be considered and construed together, follows the rule which has been in effect in this State since the earliest opinions of this court. The rule has been more broadly expressed in *Barron v. Terrell,* 124 Ga. 1078 (53 SE 181), where, with reference to the effect of adopting the Code of 1895, this court held: 'The effect of the act adopting the present Code was to enact into one statute all the provisions embraced in the Code. *Central R. Co. v. State,* 104 Ga. 831 (31 SE 531, 42 LRA 518). And in construing any section of the Code, we must treat it as a single statute forming one homogeneous and consistent body of laws, and each Code section is to be considered in explaining and elucidating every other part of the common system to which it belongs.' The rule as stated in *Barron v. Terrell,* supra, was first laid down in *Harrison v. Walker,* 1 Ga. 32, and followed in *Hester v. Young,* 2 Ga. 31, 43; *Henderson v. Alexander,* 2 Ga. 81, 85; *McDougald v. Dougherty,* 14 Ga. 674; *Thompson v. Fannin,* 54 Ga. 363; *Bealle v. Southern Bank of Ga.,* 57 Ga. 274; *Gillis v. Gillis,* 96 Ga. 11 (23 SE 107, 30 LRA 143, 51 ASR 121); *Sampson v. Brandon Grocery Co.,* 127 Ga. 454 (56 SE 488, 9 AC 331); *Cook v. Wier,* 185 Ga. 421 (195 SE 740). The authorities cited above, holding that statutes in pari materia are to be construed together, involved civil law. The same rule of construction applies to sections of the Penal Code, and the construction of criminal statutes. *Shaw v. State,* 102 Ga. 663 (29 SE 477); *Tribble v. State,* 168 Ga. 699, 701 (4) (148 SE 593)." See also *Maynard v. Thrasher,* 77 Ga. App. 316 (48 SE2d 471); and *Ryan v. Commissioners of Chatham County,* 203 Ga. 730 (48 SE2d 86).

There is also another principle of law standing in the back-

ground which is applicable to the instant case, namely, while penal statutes must be strictly construed, the construction should be a reasonable one. *Pritchett v. State*, 51 Ga. App. 228 (179 SE 915). Chief Judge Russell, speaking for the court, stated the principle in *Moore v. City of Thomasville*, 17 Ga. App. 285 (3) (86 SE 641): "While a penal statute should be strictly construed, the construction should be a reasonable one; and where two or more constructions could be given, that one should be adopted which will strengthen the law and make it effective, rather than one which will 'draw its teeth' and render it unable to 'bite.' " As stated in *Accident &c. Ins. Co. v. Cook*, 72 Ga. App. 241, 248 (33 SE2d 571): "The rule of strictness in the construction of penal statutes does not require an interpretation which defeats the very object of the law." See also *Sapp v. State*, 99 Ga. App. 657, 661 (109 SE2d 841). To hold in accordance with the defendant's contention that punishment must be fixed in the very statute which makes certain acts penal would defeat the imposition of punishment under the majority of the misdemeanor statutes of our State.

In view of the above the court did not err in any of the following respects: First, in overruling the defendant's demurrer to the indictment; second, in overruling the defendant's objection to the imposition of sentence after he had been convicted; and third, in denying the defendant's motion in arrest of judgment.

2. We now come to the question as to whether the other assignments of error in the motion for a new trial present grounds requiring reversal of the judgment overruling the motion.

By special ground 1 of his motion the defendant contends that the court erred in admitting in evidence the following answers to questions propounded by the solicitor to the mother of Betty Ann Queen over his objection: "Q. Do you remember what kind of car Mr. Byington was driving at the time he came? A. He was driving a Cadillac, I don't know what model. Q. How did Mr. Byington propose to take you and Betty Ann to Birmingham? A. Well, he said it would be very comfortable in his car, because he had an airconditioned car to

take us in, a Cadillac, that's what he said he had." The basis of the complaint is the fact that the defendant was driving a Cadillac which implied that the defendant, who was a union representative, could not afford a Cadillac unless he had income outside of his job, and probably such extra income came from the attorney in Birmingham, Ala.; however, the evidence shows that the comfort of such Cadillac was one of the inducements made by the defendant in an effort to persuade Betty Ann Queen to travel from Cedartown to Birmingham, Ala., to see the attorney. For this reason it was one of the facts and circumstances of the case and was properly admitted. The fact that some unfavorable inference may be inferred or deduced from competent, admissible evidence is not sufficient for the exclusion of such evidence. This ground is without merit.

3. Special ground 2 of the defendant's motion for a new trial assigns error on the admission of the testimony of J. D. Stewart, a witness for the State, after the defendant had been sworn and testified in his own behalf; it being contended that the testimony "constituted an attempt by the State to show that . . . [defendant] had committed a separate and wholly independent crime from that for which he was accused and on trial." The testimony of the witness (J. D. Stewart) shows facts and circumstances tending by inference to contradict portions of the defendant's testimony that he did not visit the witness to urge him to bring a suit against the Central of Georgia Railway Company. Therefore, the court did not err in admitting this testimony.

4. While it is not commendable practice for the court to inform the jury that a part of its charge was requested by a party, such statement is not cause for a new trial. *Dotson v. State*, 136 Ga. 243 (71 SE 164); *Hamilton v. State*, 129 Ga. 747 (59 SE 803). Special ground 4 of the motion for a new trial is without merit.

5. Special ground 5 of the amended motion for a new trial complains of statements of the solicitor made in argument to the jury concerning possible reasons why the defendant did not produce the attorney from Birmingham, Ala., as a witness.

The burden was upon the State to prove the guilt of the ac-

cused, and conversely there was no burden upon the defendant to prove his innocence. *Whitley v. State,* 14 Ga. App. 577 (81 SE 797). See *Jones v. State,* 14 Ga. App. 811 (82 SE 470); *Mills v. State,* 133 Ga. 155 (65 SE 368). While it has been held that the failure of a defendant to adduce testimony of a person as a witness who is competent and accessible to the court and who is cognizant of material and relevant facts in rebuttal of evidence introduced by the State is a proper subject of argument by the solicitor before the jury (see *Morgan v. State,* 124 Ga. 442, 52 SE 748; *Ponder v. State,* 18 Ga. App. 727, 90 SE 376; *Mills v. State,* 133 Ga. 155, supra), the evidence must clearly infer that such person was competent, accessible and cognizant of material, relevant facts in order to authorize such argument. See *Knox v. State,* 112 Ga. 373 (37 SE 416). See also 3 Encyclopedia of Ga. Law 300, Argument and Conduct of Counsel, § 21.

Although the defendant, who was sworn in his own behalf, testified that the attorney in question was not in the State of Georgia, and that he did not know where the attorney was, he further testified: "He would have been here if I had insisted on him to come, but I told him that I believed the preponderance of right would prevail, and I had no fear of facing the jury." The testimony of the defendant was sufficient to infer that he could have obtained the presence of the attorney as a witness in spite of the fact that the attorney was outside the State. The evidence in the case authorized the inference that the attorney was competent and had knowledge of relevant facts at issue in the case. Accordingly, we are of the opinion that the argument of the solicitor was authorized.

6. The remaining special grounds of the amended motion for a new trial are without merit.

7. Movant insists upon the general grounds of his motion for a new trial. The basis of movant's argument is that the statute under which the defendant was indicted requires that a defendant *"seek out and propose* to another person that they present and urge a suit against another" before a conviction would be authorized. (Emphasis ours.) He contends that the evidence failed to show that the defendant sought out Betty Ann

Queen, since the defendant visited her in the performance of his duties as general chairman of the union. The evidence shows, in part, that the defendant received a telephone call from a local official of the union informing him of the death of Betty Ann Queen's husband, a union member, and requested that he come to Cedartown to visit her as soon as possible. The evidence further shows that the rules of the union, in part, provide: "In order to conduct our affairs in full compliance with the law, it must be distinctly understood that representatives of this Brotherhood, including local and general committees, must refrain from handling or attempting to handle major personal injury cases or death claims for our members or their dependents, and local and general committeemen will also refrain from handling claims for minor personal injuries unless authorized to do so by a bona fide grievance in accordance with General Rule No. 5. . . When major personal injury or death cases are called to your attention it becomes your duty to carry out the policy of the Brotherhood by informing the parties of the Brotherhood's facilities for investigating cases of this character, so that they can avail themselves of these facilities of the Legal Aid Department if they choose to do so."

The evidence also shows that the defendant first visited Betty Ann Queen without her request, and while he was there, he stated that he would like for her to go to Birmingham to visit a certain lawyer about a "settlement"; that he would be glad to take her in his car; that she would get a lot "better settlement" if she would go to Birmingham; that there were no lawyers in Cedartown who could get her as "good a settlement" as the lawyer in Birmingham; that lawyers in Cedartown were not capable of handling cases like hers; and that if she did not have enough money to live on, he would loan her money until she could get her "settlement."

Betty Ann Queen testified that the defendant "said that he wanted to take me to Birmingham to see a lawyer . . . about suing the railroad. . . Mr. Byington said that I would not get a fair settlement out of the railroad. He said that I needed a lawyer and that the lawyers in Cedartown weren't capable of handling the case."

There was evidence that the defendant visited Betty Ann Queen on two other occasions. Many of the above facts are controverted by the defendant's evidence, but such only made a jury issue.

We are of the opinion that the evidence was sufficient to authorize the jury's verdict. While the defendant may have performed a legitimate errand in furtherance of a benevolent policy of the union, which was to inform the union members or their dependents of their rights resulting from the employment of such union member, yet, in the performance of such duties, the defendant had no right to insist and propose that a union member or his dependent employ a certain attorney who could get "a better settlement," and make inducements to persuade such party to obtain the services of a certain attorney to initiate legal action against the employer. The jury was authorized to conclude that the defendant did use his position with the union to "seek out and propose to another person that they present and urge a suit against another," within the meaning of the statute under which he was indicted. The evidence is sufficient to support the verdict.

*Judgment affirmed. Nichols, P. J., and Jordan, J., concur.*