WINGFIELD, ordinary, *et al. v.* KUTRES.

Under a proper construction of section three of the act approved September 5th, 1908 (Acts 1908, p. 1112), a person upon payment of one license fee of $200 is entitled to a license provided for in that section of the act, and may carry on the business at any number of places in the county in which he obtained his license.
MAY 12, 1911.

Injunction.  Before Judge Brand.  Clarke superior court.  October 22, 1910.

Nicholas Kutres instituted suit against S. B. Wingfield as ordinary, and W. E. Jackson as sheriff, of Clarke county, to restrain the collection of four executions which had been issued against the plaintiff by the ordinary and levied by the sheriff.  The executions were issued on account of a failure to pay certain fees alleged to be due for licenses to sell near beer in the county of Clarke, under the provisions of section 3 of the act approved September 5th, 1908 (Acts 1908, p. 1112), two of them issuing on account of the non-payment of licenses for the year 1908 and the others for the year 1909.  Kutres had paid to the ordinary $200, the amount of the prescribed license fee for one license for the year 1908, and also a similar amount for one license for the year 1909.  The ordi-

nary accepted payment, and in each instance issued a license which designated a particular place at which the licensee should carry on his business, but the license was not accepted, it being insisted upon the part of Kutres that under a proper construction of the act above referred to the payment of one license fee authorized him to sell near beer at any number of places in the county, and that the ordinary by the license could not restrict him to the transaction of business at one place. At the interlocutory hearing it was conceded that injunction should issue unless under a proper construction the act authorized the holder of a license to sell at any number of places in the county in which the license was issued, rather than that a separate license was required by the act to be obtained for each place of business. The trial judge construed the act as requiring only one license in the county, and granted the injunction. The defendants excepted, and in the brief of their counsel in the Supreme Court it was said expressly that the plaintiffs in error did not contend that Kutres was estopped by reason of his attorney having received the license and kept it in his possession, and that "there is only one question involved in this case, and that is whether the license prescribed by the act of September 5th, 1908 (Acts 1908, p. 1112), when paid, authorizes the person paying the same to engage in the business of selling beverages of the character therein referred to in any number of places within the county that he may desire, or whether a payment of $200 is required under said act for each separate and distinct place of business." The caption of the act was: "An act to provide a revenue to be used for the development and conduct of the penitentiary system of the State and to buy farm lands and equipment as may be needed in connection with the management, control, and employment of the convicts of this State, by requiring a license to be obtained by all persons, firms, or corporations manufacturing or selling in this State or maintaining therein supply depots or places for distributing any imitation of or substitute for beer, ale, wine, whisky, or other spirituous or malt liquors; to prescribe the terms and conditions on which such license may issue and the amounts to be paid therefor; to prohibit the carrying on of any business for which such license is required without obtaining such license; to provide penalties for violations of this act; to provide for the forfeiture of the licenses provided for in this act when the same are used

as a cloak for the violation of the law, and to appropriate the money raised hereunder; and for other purposes." Section 1 prescribed a license fee of $500 for each calendar year or part thereof to be paid by every person, firm, or corporation manufacturing, within the limits of this State, any beverage or drink or liquor in imitation of or intended as a substitute for beer, ale, wine, whisky, or other alcoholic, spirituous, or malt liquors, and required that the manufacturer obtain a license from the ordinary of the county wherein the business was carried on. Section 2 prescribed a license fee of $500 for each calendar year or part thereof to be paid by every person, firm, or corporation who shall maintain a supply depot, warehouse, distributing office, or other place of business within the limits of this State, where such beverages, drinks, or liquors as are referred to in the first section are kept for sale or distribution in quantities of more than five gallons, and required the person, firm, or corporation selling or distributing same to obtain a license so to do from the ordinary of the county wherein such "depot or place is kept." Section three was as follows: "Be it further enacted, that every firm, person, or corporation who shall sell or offer for sale in quantities of less than five gallons any such beverages, drinks, or liquors as are referred to in the first section of this act shall obtain a license so to do from the ordinary of the county wherein such business is carried on, and shall pay therefor the sum of two hundred ($200.00) dollars for each calendar year or part thereof." Section 4 prescribed that there should be no exemption or license for any drink prohibited by law; and section 5 provided that the names of manufacturers should be plainly stamped on the vessels containing the liquid. Section 6 declared that all moneys collected under the provisions of the act should be paid over to the treasurer of the State, to be held as a special fund to be used in the development and conduct of the penitentiary system of the State, and to buy such farms, lands, road equipment, or other properties as may be needed in connection therewith, or in connection with the management, control, and employment of the convicts, etc. Sections seven and eight prescribed penalties for violations of the law, while section nine repealed all laws and parts of laws in conflict with the provisions of the act.

*E. K. Lumpkin* and *Cobb & Erwin,* for plaintiff in error.

*W. M. Smith* and *Henry C. Tuck,* contra.

ATKINSON, J. In support of the contention that section three requires a separate license for each place of business in the county of a dealer in the beverages therein referred to, counsel for the plaintiffs in error urged that the act is a police measure and also a revenue measure, and that whether it be considered as a revenue measure pure and simple, or police measure pure and simple, or as of the dual character, having for its purpose both regulation and revenue, it is inconceivable that the General Assembly intended that the payment of one license fee should authorize a license designating no place of business, but authorize the holder to engage in business at any number of places in the county that he might see proper. It was pointed out that if the licensee could carry on the business at any number of places, it would be possible for one person to have a monopoly of the sale of the imitations in each county in the State in which their sale was authorized, because the law does not compel the holder of the license to conduct the sales in person, and the sales might be conducted at numerous places by duly authorized agents acting in good faith. Also, that it would open the door to fraud, so as to defeat the revenue purpose of the act by a collusive arrangement between different persons, all claiming to sell under the license of one person. It was further pointed out, that the purpose of the license is to locate the business of the holder, in order that he may be under the supervision of the authorities to see that no violation of law takes place, and that the business is conducted in such manner as not to interfere with the public peace and welfare; and that this purpose would be defeated to a large extent if the licensee should be permitted to engage in sales at numerous places. To locate the place of business of the holder of the license is not necessarily the sole purpose of a license. A business may be licensed, or a person may be licensed to transact business, and in neither instance is restriction to a particular place essential. The legislature may not deem that the character of the business is such that for the purpose of police regulation it should be restricted to a particular place. All of the reasons pointed out by the plaintiffs in error, as above enumerated, to show why the act should be construed as contended for by them, were appropriate matters for consideration by the legislature in enacting the law; but they are all consistent with the construction placed upon the act by the trial court, and do not require a different

construction. The act might produce less revenue if one fee and license authorize a person to deal at a single place rather than in a number of places, or it might not; and whether it would or not, and whether the legislature, in dealing with the matter as a revenue matter, was satisfied to exact but one license and fee from a dealer in each county in which he should carry on the business, was a matter for legislative consideration. It was also for the legislature to determine what police supervision, if any, should be required for this particular character of business; and the argument that it might to a greater or less extent require such supervision would not necessitate the construction contended for by the plaintiffs in error. As a revenue measure the exaction of a license of $200 for each dealer in each county in which he carries on the business of selling the imitations specified in the act comports with the object of the act. As a police measure the penalty imposed by other sections of the act comports with that object. Section three omits any reference to location at which the licensed sales may be made, save only that in declaring how licenses shall be obtained it is provided that they shall be granted by the ordinary of the county wherein such business is carried on. The nature of the business is such as that it could be located at a given place or places, or be conducted in a transitory manner, and there is no attempt to confine its operation to one or more localities. In construing statutes subsequent acts of the legislature on the same subject may be considered. *Barron v. Terrell,* 124 *Ga.* 1077-79 (53 S. E. 181). Paragraph 3 of section 7 of the general tax act approved August 16th. 1909 (Acts 1909, pp. 36-64), deals with the subject covered by section three of the act of 1908 involved in this case, and, in addition to raising the license fee to $300, declares that it shall be paid "for each place of business," and also restricts the right to engage in such business to the limits of incorporated cities, towns, or villages of not less than a specified number of inhabitants. This seems to be a recognition by the legislature that the former act did not exact a license fee for each separate place of business, and the manifestation of an intention to change the law so that a separate license fee might be required for each place of business. In former general tax acts, such as the act approved August 15th, 1904 (Acts 1904, p. 26), in dealing with licenses to engage in businesses of similar character, where it was intended that a license fee should be paid

"for each place of business," it was expressly so declared. The right to sell near beer without the payment of a license is inherent, unless expressly restricted by statute, and statutes exacting licenses for such purposes are to be strictly construed. But it does not require a strict construction of this statute to hold that section three was not intended to exact a separate license for each place of business. While it might have done so, the General Assembly, dealing with the subject as it then appeared to it, was content to exact one fee and require a license from every person, firm, or corporation engaging in the business in the county. Subsequent events seem to have caused the legislature to view the matter differently, and to change the law, as already pointed out, not only as to the amount of each license fee charged, but by requiring a separate license for each place of business in each county, and restricting the right to carry on such business to the limits of incorporated cities, towns, and villages containing more than a specified number of inhabitants. Counsel for plaintiffs in error have cited the following authorities: Malkan *v.* Chicago, 217 Ill. 471 (75 N. E. 548, 2 L. R. A. (N. S.) 488); Wason *v.* Severance, 2 N. H. 501; Murrell *v.* Bokenfohr, 108 La. 19 (32 So. 176); Matter of Lyman, 59 N. Y. App. Div. 217 (69 N. Y. Supp. 309); 21 A. & E. Enc. Law (2d ed.), 814, note 7; 23 Cyc. 119 (C), note 69; 17 A. & E. Enc. Law (2d ed.), 237; State *v.* Walker, 16 Maine, 241. But an examination of all of them, except the last, shows that there were restrictions in the statutes or ordinances, and in some cases licenses (upon which the right to transact the business depended under the law of the State), which expressly confined the licensee to conduct the business mentioned at specified places. In the last case cited, to wit, State *v.* Walker, 16 Maine, 241, the ruling, which restricted the operation of the license to one place, was based largely on the fact that the statute which exacted the license required that the person to be licensed should have certain moral qualifications to be ascertained by the judgment of certain officers, and that any person so approved, before being licensed, should give bond, conditioned as prescribed in the statute. The decision was rendered in a case against the mere agent, who had not executed the bond. The act there under consideration also contained a provision that "no innholder, victualler, or retailer shall suffer any disorderly conduct in his house, shop, or dependencies thereof, nor suffer any person

to drink to drunkenness or excess in his or her house or shop, or suffer any minor or servant to sit drinking there," which the court declared indicated but one house, and one shop, to be conducted by one person. The reasoning of the court in that case will not apply to a statute similar to that which we have under consideration, where no qualifications are prescribed and no bond required for one who desires to engage in such business, and where the act contains nothing to indicate that one particular place of business was in contemplation of the legislature.

*Judgment affirmed. All the Justices concur.*