64501. ATLANTA CASUALTY COMPANY v. FLEWELLEN.
64511. VAN DYKE v. ALLSTATE INSURANCE COMPANY.

BIRDSONG, Judge.

Insurance Coverage. Each of the cases considered in this decision reached this court as a separate appeal. *Atlanta Cas. Co. v. Flewellen,* case no. 64501, resulted in summary judgment being entered for the insured, Mrs. Flewellen. In *Van Dyke v. Allstate Ins. Co.,* case no. 64511, the opposite result occurred with summary judgment for Allstate, the insurer. However, the facts are substantially the same and the pivotal issue presented to this court in each case simply stated is whether the optional coverages of Code Ann. § 56-3404b (b), effectively were offered to and rejected by Flewellen and Van Dyke. This one issue can be resolved in a single opinion; therefore, the court in the interest of judicial economy consolidates the two cases as one. Nevertheless, the facts will be separately stated.

In no. 64501, *Flewellen,* the facts show that Mrs. Flewellen was issued automobile insurance by Atlanta Cas. Co. effective March 6, 1979 for one year. This policy was issued pursuant to an application accepted by Atlanta Casualty on March 5. The application consisted of two pages. Page 1 is entitled "Private Passenger Auto Application." This page contained general personal information pertaining to mandatory minimum coverage for liability and no-fault coverage. On the obverse of the application there appeared at the top of the page in large capital letters "OFFER TO PURCHASE ADDITIONAL COVERAGE." (See Appendix I.) Only the statutorily required optional coverages of no-fault insurance appear on this obverse side. The first offer related to optional, additional personal injury protection required by Code Ann. § 56-3404b (a). The application provided as follows: "I elect the following aggregate personal injury protection (PIP) and reject all other options. Additional benefits include the basic $5,000." The form then set forth spaces providing for a possible choice of $10,000, $25,000, $50,000 and finally a rejection of all PIP options (Code Ann. § 56-3404b (a) (1)) (OCGA § 33-34-5 (a) (1) (Michie 1982) (Editorial Change only)). The form reflects by a written entry in each appropriate space that Mrs. Flewellen rejected all offered optional coverage. The second offer pertained to additional property loss coverage and specifically

offered full coverage collision; full coverage comprehensive; and loss of use coverage. (Code Ann. § 56-3404b (a) (2)) (OCGA § 33-34-5 (a) (2) (Michie 1982) (Editorial change only)). These optional coverages provided spaces for acceptance or rejection, and reflected that Mrs. Flewellen rejected this coverage by appropriate execution in the space provided.

Immediately below these separate offers, the language appears: "IMPORTANT: All above coverages must indicate accepted or rejected before application is signed by applicant." Then immediately above the space reserved for the applicant's signature appears the following, all in capital letters: "APPLICANT'S STATEMENT—READ BEFORE SIGNING." Thereafter on the same page as that containing the offer to purchase the optional coverage and fully separated from the other provisions pertaining to the application which appear on the front side of the application, there is affixed the signature of Mrs. Flewellen.

In case no. 64511, *Van Dyke v. Allstate Ins. Co.,* the facts are slightly different. Allstate issued Vera Van Dyke an auto insurance policy based upon an application dated December 10, 1975 for a period of five years with a premium renewal each six months. This application consisted of three pages. The first page was entitled "Application for Automobile Insurance." This first page reflected personal information concerning mandatory minimum liability and PIP coverage and contained the signature of the applicant. Page 2 listed the operators, driving records and insurance record, likewise signed by the applicant. Page 3 was entitled "ACCEPTANCE/REJECTION OF OPTIONAL COVERAGES." (See Appendix II.) The following advice was provided on page 3: "You have the right to reject these coverages or to select other options if available." Under this advice, there appear the two types of optional coverage required by Code Ann. § 56-3404b (a) (1) and (2) supra, i. e., personal injury protection with spaces for accepting or rejecting $10,000, $25,000 or $50,000 additional coverage; and property damage coverages with spaces for accepting coverages for collision, comprehensive, and loss of use—rental reimbursement. All spaces were executed reflecting Van Dyke had rejected all options except for her acceptance of comprehensive coverage. Separately under each of these four offers indicating her choice, there appears the signature of Mrs. Van Dyke.

Each of these cases reached this court following the grant of summary judgment by the trial court based upon its interpretation of the recent decision of this court in *Jones v. State Farm Mut. Auto. Ins. Co.,* 156 Ga. App. 230 (274 SE2d 623). The confusion created by *Jones* is manifested by the fact that the two trial judges each reached

opposite conclusions. Thus in case no. 64501, the trial court granted summary judgment to Mrs. Flewellen and denied summary judgment to the insurer, Atlanta Casualty. In the case of Van Dyke, the trial court granted summary judgment to the insurer Allstate and denied same to Van Dyke. The respective appeals followed. *Held:*

The question posed by each of these cases arises out of the interpretation placed upon the controlling statute by this court in the *Jones* case. In that case, this court held at p. 233: "We construe Code Ann. § 56-3404b as imposing an evidentiary burden upon no-fault insurers to demonstrate that optional coverages were expressly offered to, and knowingly accepted or rejected in writing by, each of their applicants for no-fault insurance. This evidentiary burden is satisfied if and when an insurer can demonstrate that its applicants completed and signed separate spaces on the no-fault insurance application form indicating their acceptance or rejection of each of the optional coverages listed in Code Ann. § 56-3404b (a)."

The insurers in the case under review, Atlanta Casualty and Allstate, now ask this court to re-examine the language of Code Ann. § 56-3404b (a) (2) as interpreted by the *Jones* case and reverse the requirement of that case which called for a separate space *and a separate signature* by or at each space setting forth each choice contained as a subpart of the two optional coverages mentioned in Code Ann. § 56-3404b (a); i. e., PIP and property damage. Thus, each insurer contends that the intent of the statute is satisfied where there is a separate election shown in writing as to optional property coverage and one of the optional amounts of $10,000, $25,000, or $50,000, followed by a signature reflecting that the writing shows the selected choice was personally and knowledgeably made by the applicant for the particular coverage.

We accept that responsibility and have carefully re-examined the statute to glean from it the intent of the General Assembly. The cardinal rule of statutory construction is to ascertain the intent of the legislature. It is equally fundamental that it is our duty to look first to the language of the statute and if the legislative intent is plain and expressed unambiguously, there is no interpretation required before the court executes its sworn duty to enforce the statute. Thus our primary concern is whether Code Ann. § 56-3404b (b) is plain and unambiguous as this court has stated in *Jones. Bauer Intl. Corp. v. Cagles, Inc.,* 225 Ga. 684, 686 (171 SE2d 314). To resolve this issue one must look not only to the literal language of the statute but also to the recognized rules of statutory construction as well as equally well recognized rules of reason and logic, among the foremost of which is to read and construe a statute so as to give effect to its author's intent. Where language, rules of construction, and logic coincide the answer

is apparent and simple. But where the literal language, that is the diction, grammar, and syntax, does not square with reason or intent, then the literal must yield. With full benefit of hindsight, aided by the insights of both bench and bar, we now conclude particularly that the portion of Code Ann. § 56-3404b (b) requiring *"these spaces* [to be] completed and *signed"* is neither clear nor free from ambiguity.

It appears manifest from a reading of Code Ann. § 56-3404b (b) that the legislature was addressing the subject of applications for motor vehicle liability insurance. Inasmuch as this code section referred to optional coverages, the legislature also required separate spaces designed to inform the applicant of his choice of additional coverage of PIP and property damage. Because of the position of words in a subordinate clause appearing at the end of an independent clause referring to *policies* of insurance for which applications are made wherein the subordinate clause required spaces to be executed and signed, did the legislature intend the spaces to be executed and the application signed? Or are we as a court required blindly to render a literal reading that would require a signature to accompany a space designed no larger than one that will accommodate a checkmark or an "X" to reflect a choice?

We conclude that to require a separate and repetitive signature by each subspace defies the rules of logic and reason and blindly applies a rule of literalness.

To illustrate the illogic of so literal an interpretation, the following examples may be pertinent: Had the statute required the insurer to prepare a multi-form document containing various copies in differing colors and require the insurer to furnish the insured with a "pink" copy and the insurer inadvertently furnished the insured with a "green" copy, there would be no compliance with the statute. Again, the section deals with applications for motor vehicle insurance. Surely the legislature would intend the applicant to sign his application. However, a literal interpretation would require only the spaces to be executed and signed and would not require the application itself to be signed. Furthermore, the statute provides that no policy shall be issued in this state unless the spaces are completed and signed. A literal interpretation would require a conclusion that if subspaces were not executed and signed, no policy could issue and a policy issued without the spaces signed would be void. Lastly, we observe that the bench and bar of this state long has interpreted a statute calling for a similar signing of subportions to mean only a signing at the end of the document to personalize it rather than to require the individual components of the document be signed. We refer to Code Ann. § 81A-133 (a) (OCGA 9-11-33 (a) (2) (Michie 1982)) wherein the pertinent statute provides: "(2) Each in-

terrogatory shall be answered separately and fully in writing under oath.... The answers are to be signed by the person making them...." A literal interpretation of this provision mandates that each answer be signed, but the reasonable and logical interpretation suggests and practice demands only that the deponent sign at the end of the interrogatory, the practice long followed in this state.

If because of ambiguity we are forced to depart from a literal reading and proceed to a logical interpretation, we more comfortably read Code Ann. § 56-3404b (b), to require separate *spaces* for an insured to indicate by execution in those spaces his acceptance or rejection of each of the optional coverages (PIP and property damage) and no policy will issue unless these spaces are completed and the application appropriately signed by the insured. Some support is provided for this position from the fact that after *Jones,* supra, became the law of this court the legislature in its session in 1982 amended Code Ann. § 56-3404b (b) to read: "(b) Each initial application for a new policy of motor vehicle liability insurance sold in this state after November 1, 1982, shall contain a statement in bold-faced type signed by the applicant indicating that the optional coverages listed in subsection (a) of this Code section have been explained to the applicant." Obviously, the legislature intended to and did remove any requirement that spaces be executed or signed. " 'If it can be gathered "from a subsequent statute in pari materia what meaning the legislature attached to the words of a former statute, this will amount to a legislative declaration of the meaning, and will govern the construction of the first statute." ' " *Forrester v. Interstate Hosiery Mills,* 194 Ga. 863, 866 (23 SE2d 78), quoting *Barron v. Terrell,* 124 Ga. 1077, 1079 (53 SE 181) and citing *Wingfield v. Kutres,* 136 Ga. 345, 349 (71 SE 474); see also *Moore v. Ga. Public Service Comm.,* 242 Ga. 182, 184 (249 SE2d 549). Lastly, when subsection (c) of this statute is considered in conjunction with (b), the notice requirement of subsection (c) makes illogical the multiple signature interpretation of *Jones.* Subsection (c) authorizes a presumption of rejection of optional coverage if after an insured of an existent insurance policy has been notified of the availability of optional coverages, the insured fails to notify the insurer of his written acceptance or rejection within 30 days after written notice of the offer by first class mail. It is hardly logical that the legislature would require such specific notice and acknowledgement as in subsection (b) and yet allow a presumption of rejection by failure to respond in (c).

Though we agree facially that a literal reading of Code Ann. § 56-3404b (b) seems to call for an execution *and* signing of each subspace as enunciated in *Jones,* supra, as previously observed "...

[t]he intention of the Legislature, is the cardinal guide to construction and '[t]he real intention, when collected with certainty, will always, in Statutes, prevail over the literal sense of terms.' " *Erwin v. Moore,* 15 Ga. 361, 364. Stated otherwise, " '[i]n construing a Statute, wherever the intention of the Legislature can be discovered, it should be followed with reason and discretion, though such construction should seem contrary to the letter of the Statute.' " Id. Accordingly, because we find the construction of Code Ann. § 56-3404b (b) in *Jones v. State Farm Mut. Auto. Ins. Co.,* supra, to be contrary to the intent of the General Assembly, we hereby overrule that case.

In view of the above, we read the provisions of Code Ann. § 56-3404b (b) to reflect the intent of the legislature to make certain that an applicant for auto insurance is aware that he (the applicant) optionally is entitled to higher amounts of PIP or property damage coverage than required by the statute as minimum mandatory coverage. In order to insure this awareness, it requires that the applicant be presented with the statutory options with spaces for acceptance or rejection of one of the three higher coverages of PIP or property damage. This election is to be made in writing and personally affirmed by the placement of a signature of the applicant on the application in such a manner that it reasonably demonstrates awareness of the availability of the options and the choices made. Inasmuch as the legislature did not mandate a particular format to be followed, it is clear that the insurer was left the power of preparing a form which would satisfy the statutory requirement of providing a separate space for each form of optional coverage allowing a showing of acceptance or rejection thereof, and a place for a signature reflecting that the applicant had had an opportunity and personally had exercised the option.

Examining the two cases in question in light of the legislation, we find the following: In *Van Dyke* on a separate (third) page dealing with nothing except acceptance or rejection of optional coverages, the form listed three optional amounts of PIP coverage ($10,000, $25,000 and $50,000) and provided a separate space for acceptance or rejection of each amount. There was a written choice shown for each amount (rejection). Immediately thereunder was the written signature of Vera Van Dyke. Likewise property damages choices pertaining to collision, comprehensive, and loss of use were separately offered with separate spaces allocated for the applicant's acceptance or rejection. The application reflects a written rejection in the space for each option subscribed by the separate signature of Vera Van Dyke, thus a total of four signatures in all. In the *Flewellen* case, on the obverse side of the application and dealing only with the

offer to purchase optional coverages, the applicant was required to elect one of three optional amounts of PIP ($10,000, $25,000, or $50,000) or reject all three; and to elect or reject full coverage collision, comprehensive, loss of use and uninsured motorist. Appearing thereon was a written choice in the spaces provided showing a rejection of all PIP and optional property damage coverage. The applicant, Mrs. Flewellen, was advised on the face of the application that each of these coverages individually must indicate acceptance or rejection before signing and that the applicant should read the statement before signing. Following immediately thereunder was Mrs. Flewellen's written signature. The insureds (Flewellen and Van Dyke) do not (nor could they reasonably) contend that a separate space was not provided for each of the three optional amounts of PIP or property damage coverage or that a written election was not entered as to each election in their respective applications. Their only contention is that a separate signature did not accompany each of the three sub-PIP options.

As hereinbefore indicated, such a literal interpretation is inconsistent with the logical and meaningful purpose of the legislature and would place form over substance. The intent of neither Mrs. Flewellen nor Mrs. Van Dyke to reject all optional coverages of PIP would have been more clearly demonstrated by the placement of a separate signature after each written PIP rejection. Though the repeated signatures probably would not have been improper, the absence of these repetitive signatures does not detract from the clear awareness that the optional coverages were offered and rejected by the applicants. A signature does immediately follow the election concerning the only two types of coverage mentioned in Code Ann. § 56-3404b (a) as required by Code Ann. § 56-3404b (b) (PIP and property coverage). This placement of each signature in these cases reasonably satisfies the statutory intent that an applicant signify understanding of the optional coverages, the right to accept or reject the same, and the volitional and knowledgeable exercise of those rights by affirming and affixing a signature in such a place and way that no other reasonable conclusion is possible. In the light of the problem presented (to make the insured aware of the options), the remedy sought (a knowledgeable choice) and the insurer's implementation of the statute (the preparation of the application forms), we conclude that the manifest legislative intent and purpose is satisfied.

Moreover, neither Mrs. Flewellen nor Van Dyke deny that they signed the applications on which was so prominently displayed the optional PIP coverages. They do not allege any legal reason or incapacity which enticed or precluded them from reading that which

they signed. This being so, each applicant is presumed to have read the application and to have understood the contents thereof. *Parker v. Fidelity Bank,* 151 Ga. App. 733, 734 (261 SE2d 465); *State Farm Fire &c. Co. v. Fordham,* 148 Ga. App. 48, 52 (1) (250 SE2d 843); *Jefferson Standard Life Ins. Co. v. Bridges,* 147 Ga. App. 5, 7 (4) (248 SE2d 5); *Feltman v. Nat. Bank of Ga.,* 146 Ga. App. 434, 437 (246 SE2d 447).

Based upon the foregoing it is concluded that the trial court erred in granting summary judgment to Mrs. Flewellen and denying summary judgment to Atlanta Casualty Company. We find no error in the grant of summary judgment to Allstate Ins. Co. Accordingly, the judgment in case no. 64501 is reversed and the judgment in case no. 64511 is affirmed.

*Judgment reversed in No. 64501 and affirmed in No. 64511. Deen, P. J., Shulman, P. J., Sognier and Pope, JJ., concur. Deen, P. J., concurs specially. Quillian, C. J., McMurray, P. J., Banke and Carley, JJ., dissent.*

DECIDED DECEMBER 1, 1982 —
REHEARING DENIED DECEMBER 13, 1982 — ▮▮▮▮▮▮▮▮

*William C. Sanders,* for appellant (case no. 64501).
*William H. Hendrick,* for appellee.
*O. J. Mullininx, Don C. Keenan,* for appellant (case no. 64511).
*Martin Kent, Thomas S. Carlock, R. Clay Porter,* for appellee.
*John R. Rogers, James E. Butler, Jr., Alfred L. Allgood, Andrew W. Estes, Don C. Keenan, Lamar W. Sizemore, Jr., William S. Stone, William Lewis Spearman, James G. Jackson, Oliver B. Dickins, Jr., Bryan F. Dorsey, A. Terry Sorrells, Anthony J. McGinley, N. Forrest Montet, Robert M. Travis, Thomas D. Harper, H. Andrew Owen, Timothy J. Sweeney,* amici curiae.

**OFFER TO PURCHASE ADDITIONAL COVERAGE**

elect the following aggregate limit of personal injury protection (PIP) and reject all other options. Additional benefits include the basic $5,000.

☐ $10,000   ☐ $25,000   ☐ $50,000   ☑ REJECT ALL (PIP) OPTIONS

| ACCEPTED | REJECTED | |
|---|---|---|
| ☐ | ☑ | FULL COVERAGE COLLISION |
| ☐ | ☑ | FULL COVERAGE COMPREHENSIVE |
| ☐ | ☑ | LOSS OF USE COVERAGE |

| ACCEPTED | REJECTED | |
|---|---|---|
| ☐ | ☑ | UNINSURED MOTORIST COVERAGE |

:e with the provision of the state law respecting Automobile Liability Insurance which permits the insured named in the policy to reject or accept as o—e, the Uninsured Motorists Coverage, the undersigned insured does hereby, for the above policy and any renewal thereof, reject or accept as indicated coverage provided for protection of persons insured under this policy who would legally be entitled to recover damages from the owner or operator of a motor vehicle because of bodily injury, sickness or disease, including death resulting therefrom.

(T: All above coverages must indicate accepted or rejected before application is signed by applicant.

**APPLICANT'S STATEMENT — READ BEFORE SIGNING**

in of our underwriting procedure, a routine inquiry may be made which will provide applicable information concerning character, general repu- n, personal characteristics and mode of living. Upon request, additional information as to the nature and scope of the report, if one is made will ovided.

eby a.ply to the Company for a policy of insurance for the coverage set forth in this entire application. It is understood and agreed that any pol- ssued or any renewal thereof is based on the statements contained herein. I further agree that said policy shall be null and void if these answers are or given with the intent to deceive, or materially affect the acceptance of the risk assumed by the company.

eby authorize the prospective insurer to obtain from the Georgia Department of Public Safety a copy of my Motor Vehicle Report for the use in g and/or Underwriting my existing insurance or the insurance for which I do hereby apply and any renewal thereof. I understand that in obtaining stor Vehicle Report a consumer reporting agency may be used by the insurer and I do hereby authorize such use. I hereby certify that the named rs in my household under this policy have authorized me to consent on their/his/her behalf and for the insurer to obtain Motor Vehicle Report(s) ating and/or underwriting.

E: 8-5-19   TIME: 11:30 P. M. Applicant's Signature _Mattie Lee Llewellen_

APPENDIX I

## Acceptance/Rejection of Optional Coverages
### (Georgia)

☑ Allstate Insurance Company
☐ Allstate Indemnity Company
Name of Applicant _____ *For H E Chas C Vin Ryle* _____
Allstate Application Number _____ *B781652* _____
Date _____ *1 1 -16.-75* _____

This form must be attached to all new business applications submitted after January 1, 1975. You have the right to reject these coverages or to select other options if available. These selections apply to this and subsequent policy or premium periods.

| Accept | Reject | Personal Injury Protection Coverage |
|--------|--------|-------------------------------------|
| ☐ | ☑ | VA2 - $10,000 Aggregate Limit |
| ☐ | ☑ | VA3 - $25,000 Aggregate Limit |
| ☐ | ☑ | VA4 - $50,000 Aggregate Limit |

*Chas C Vin Ryle*
Signature

☐ ☑   Collision Coverage — full coverage Collision with no deductible

*Chas C Vin Ryle*
Signature

☑ ☐   Comprehensive Coverage — full coverage Comprehensive with no deductible

*Chas C Vin Ryle*
Signature

☐ ☑   Loss of Use — Rental Reimbursement

*Chas C Vin Ryle*
Signature

# APPENDIX II

## APPLICATION FOR STATE FARM AUTOMOBILE INSURANCE

OFFICE COPY

| QUALIFYING POLICY NO. | CLASS | REPLACES POLICY NO. |
|---|---|---|
| See other apps attached | 1 | |

**LAST NAME** Jones **FIRST NAME** William **MIDDLE NAME OR INITIAL** Frank

**MAILING ADDRESS** — NUMBER AND STREET 3635 Huron Ave — CITY Columbus — STATE Ga — ZIP CODE 31904 — COUNTY Muscogee — HOME TELEPHONE NO. 561 6066

**EMPLOYER** Independent Consultant since 1 — YEARS WITH THIS EMPLOYER — ADDRESS OF EMPLOYMENT Columbus Ga

DURING THE PAST 5 YEARS, HAS THE APPLICANT OR ANY HOUSEHOLD MEMBER HAD AUTO INSURANCE CANCELLED, REFUSED ISSUANCE OR RENEWAL... Yes No

DOES THE APPLICANT OR ANY REGULAR DRIVER HAVE ANY 1. PHYSICAL LIMITATIONS OR 2. MENTAL DEFECTS? IF YES, EXPLAIN IN REMARKS. No

**RECENT / PRIORITY INSURER** Sears — POLICY NO. 513500 — FROM 5-18-76 TO 5-18-77

| LIST ALL DRIVERS | DRIVER'S LICENSE NO./STATE | BIRTHDATE MO. DAY YR. | OCCUPATION | SEX | RELATIONSHIP TO APPLICANT | MARITAL STATUS |
|---|---|---|---|---|---|---|
| APPLICANT | Ga 201211 | 7-11-19 | APPLICANT | M | APPLICANT | M |
| | | | | | | |

| CHECK VIOL. ACC. | NATURE OF VIOLATIONS OR DETAILS OF ACCIDENTS (Dates, damages, injuries or deaths, and how accident occurred) | CHARGEABLE YES/ANT. PAID |
|---|---|---|
| X | Acc April 1977 Car was in Right Lane making improper turn in Jone Hit her Left Rear fender Judge dismissed all charges due to circumstances | X 0 |

| YR. | MAKE AND MODEL | BODY TYPE | CYLS | VEHICLE IDENTIFICATION NO. |
|---|---|---|---|---|
| 74 | Ford Cuts | 2da HT | | 4G2 1H1265256 |

**YR. PURCHASED** 74 **COST PRICE NEW** $5000 **LIENHOLDER** NONE

| IN CITY | BUS USE | FARM RATE | 2 CAR RULE | DRV. TRN. | GR. DISC. | CHILD AT SCH. | RATING GROUP | CLASS |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | 6 | 103 |

Insurance applied for is only for the coverages listed by specific premium entry. If premium cannot be entered, check boxes to indicate coverage requested.

| | LIMITS | REJECT | ACCEPT | MEM. PREM. |
|---|---|---|---|---|
| | 25/50/10 | | X | 56 20 |
| PERSONAL INJURY PROTECTION | P1 $5,000 P2 $10,000 P3 $25,000 P4 $50,000 | | | |
| MED. PAY. | $5000 | | X | |
| COMPRE-HENSIVE | FULL $50 $100 OTHER | | | |
| COLLISION | FULL $50 $100 $250 OTHER | | | |

DEFENDANT'S EXHIBIT 1

| DATE AND TIME OF APPLICATION | AGENT'S CODE STAMP |
|---|---|
| MO. 5 DAY 18 YR. 77 22.5 PM | R P Hen... 1437  J Rayford 04 |

**BINDER** — EFFECTIVE DATE 5-18-77

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY / STATE FARM FIRE AND CASUALTY COMPANY of Bloomington, Illinois, hereby binds as of the requested effective date, the insurance applied for, subject to all of the terms and conditions of the automobile policy in current use by such company for a period of 30 days from the effective date. Issuance of the policy applied for voids this binder.

AGENT'S SIGNATURE X R P Hen...

I hereby apply for the insurance indicated and represent (1) I have read this application, (2) the statements herein are correct and (3) I am the sole owner of the described automobile except as otherwise stated.

IT IS UNDERSTOOD AND AGREED THAT NO INSURANCE IS EFFECTIVE HEREUNDER (A) UNLESS THE BINDER IS COMPLETED DESIGNATING THE COMPANY ACCEPTING THIS APPLICATION AND SIGNED BY AN AUTHORIZED AGENT OF SUCH COMPANY OR (B) UNTIL THE DATE OF THE POLICY OR BINDER ISSUED BY THE COMPANY ACCEPTING THIS APPLICATION.

**APPLICANT'S SIGNATURE** X William F. Jones

## APPENDIX III

DEEN, Presiding Judge, concurring fully with the majority opinion but also concurring specially.

While associating fully with the majority opinion, several additional observations appear apt, appropriate and applicable.

"We do not feel that this court can, by judicial opinion, enlarge upon or by construction grant rights or causes of action not clearly included in the statute itself." *Ford Motor Co. v. Carter,* 239 Ga. 657, 663 (238 SE2d 361) (1977). The court's responsibility in construing a contract has been succinctly stated in *Standard Guaranty Ins. Co. v. Davis,* 145 Ga. App. 147, 151 (243 SE2d 531) (1978): "Courts, including Appellate Courts, are duty bound to be *just* before they are generous, and have no more right by strained construction, to make an insurance policy more beneficial by extending coverage contracted for than they would have the right to increase the amount of coverage." (Emphasis supplied.) "Where the intention of the legislature is so inadequately or vaguely expressed that the court must resort to construction, it is proper to consider the results and consequences. It is the duty of the court to consider the results and consequences of any proposed construction and not so construe a statute as will result in unreasonable or absurd consequences not contemplated by the legislature." *New Amsterdam Cas. Co. v. Freeland,* 216 Ga. 491, 495 (117 SE2d 538) (1960). The Georgia courts have consistently recognized that a single signature suffices, absent fraud, to bind an insured to all representations contained in the application for insurance. *All American Life & Cas. Co. v. Saunders,* 125 Ga. App. 7 (186 SE2d 328) (1971).

Applying the foregoing principles to the ordinary common sense meaning of the wording of Code § 56-3404b (b), it is clear that the intent of the legislature was to (a) require by definite checkmark, or other appropriate indication, an acceptance or rejection *within* the separate blocked off area space on the application, and (b) sign applicant's signature *above* an appropriate line on the application. These are historically the conditions existing prior to and subsequent to the time gap era of *Jones v. State Farm Mut. Auto. Ins. Co.,* 156 Ga. App. 230, 232 (274 SE2d 623) (1980). This case held that the applicant must sign separate spaces, and the spaces on the application in that case and in the two instant cases are not big enough to sign within the spaces. Spaces blocked off may be small or there may be large open spaces. For the court to construe that the applicant must sign a space or a separate space is itself a vague construction. If a space is large enough and blocked off with a signature line an applicant could sign on a line within a space. Blocked off spaces or separate spaces in this case mean to indicate by checkmark acceptance or rejection of coverages. It is clear to me that

when the applicable code section uses the word "signed by the prospective insured" this has to refer back to the second word "application" so that after the applicant has accepted or rejected within the separate spaces he must simply sign his name thereunder on or above a line indicated for his signature.

The law of Georgia holds that all applicants still have a duty to read their applications and their policies. They are bound by what is listed in the applications. If an agent tells the applicant something to the contrary or waives any of the conditions on the application, then the applicant may rely on the agent, who is speaking for the company, unless there is a limitation on the authority of the agent engrafted on the face of the application. "Absent a clear and unequivocal limitation on the authority of an agent of an insurance company, and absent fraud and collusion between the agent and the prospective insured, the actual knowledge of the agent of facts amounting to innocent misrepresentations in the application for insurance is imputed to the insurer, and the insurer will be estopped to assert that it would not have issued the policy if it had knowledge of the true facts." *Allstate Ins. Co. v. Anderson,* 121 Ga. App. 582 (2) (174 SE2d 591) (1970). See also *Reserve Life Ins. Co. v. Meeks,* 121 Ga. App. 592 (174 SE2d 585) (1970); *Chester v. State Farm Mut. Auto. Ins. Co.,* 121 Ga. App. 599 (174 SE2d 582) (1970). If 99 coverages were offered in an application under *Jones,* twice that amount, 198 spaces, would be required, plus, at least 99 separate signatures. This would result in absurd consequences not contemplated by the legislature and a great burden on the applicant and company.

Further, attention must be focused, wherein *Jones* quotes Code Ann. § 56-3404b (b), where the word "signed" follows the words "separate spaces." In discussing this code section and applicable wording the opinion transposes as a connecting and transitional link in reaching an erroneous, misconstrued, and strained result the words "sign" and "signature." The opinion places the latter quoted words as preceding "separate spaces" rather than following these words as required by a clear reading of the statute.

Indubitably, the subject matter of Ga. Code Ann. § 56-3404b (b), the heart of *Jones v. State Farm,* supra, and related cases, is the application form. All of this statute centers on the application to be executed by applicants for insurance under the Georgia Motor Vehicle Reparations Act. The statute reads as follows: "Each *application* for a policy of motor vehicle liability insurance sold in this State must contain separate spaces for the insured to indicate his acceptance or rejection of each of the optional coverages listed in sub-section (a) above and no such policy shall be issued in this State unless these spaces are completed and *signed* by the prospective

insured." (Emphasis supplied.)

Central to the dispute is whether each of the "separate spaces" of which the statute speaks is to be used "to indicate his acceptance or rejection" (again employing the statutory language), with a single signature following this group of separate spaces in such reasonable proximity to them as to enable a reasonable person to infer that the signature was intended to ratify the indications (in unspecified form but presumably consisting of a check-mark or an "x" or some other such customary symbol) of acceptance or rejection; or whether, on the other hand, each of the prescribed "separate spaces" is to be both "completed" (by the check-mark or other indication) and "signed" by the applicant — i.e., whether the applicant is to place both a symbolic indication and a signature *in* each "separate space."

To resolve this issue one must look not only to the literal language of the statute but also to the recognized rules of statutory construction and the equally well recognized rules of reason and logic, among the foremost of which is that one must so read and so construe a statute — or, indeed, any statement — as to give effect to its author's intent. Where language, construction rules, and logic coincide, there is no problem. But where the literal language — that is, the diction, grammar, and syntax — does not square with reason or with intent (where the latter can be ascertained), then it is the literal that must yield.

In the statute presently under consideration the manifest intent is made indisputably clear in the version of the statute enacted by the legislature in response and subsequent to the outcry prompted by the decision in *Jones v. State Farm,* supra. Additionally, it is simply contrary to reason to read the phrase "these spaces are completed and signed" as requiring the applicant to jam, ram or cram both a check-mark and a signature into "these spaces," which on the typical application form consist either of a line measuring approximately three typewriter characters in length or, alternatively, of a "box" made of a series of vertically and horizontally placed characters of similar dimensions. It is perhaps equally contrary to logic to insist, as an alternative literal reading would mandate, that "completed and signed" really means only that each space must be "signed," and that "completed and" is mere surplusage. Surely it is more reasonable to interpret the statute as meaning that each of the separate spaces must be "completed" and that it is the *application form* which must be "signed."

It is unfortunate that the actual language of the statute contains this facial ambiguity; careful attention to grammar and syntax on the part of the draftsman would have avoided its occurrence. A cursory grammatical and syntactical analysis will perhaps be illuminating.

The single sentence comprised by the statute consists of two independent clauses, with a subordinate (conditional) clause modifying the second of the two. The first independent clause begins with "Each application . . ." and extends through "subsection (a) above"; the second independent clause begins with "and no such" and extends through the remainder of the sentence, the last eleven words (beginning with "unless") composing the subordinate clause. The grammatical subject of the first independent clause is "application," and the predicate is "must contain." The grammatical subject of the second independent clause is "policy," and the predicate is "shall be issued." In each of these two clauses the grammatical subject is also clearly the logical subject. In the subordinate clause, however, the grammatical subject is "these spaces" and the grammatical predicate is "are completed and signed," and it is here that grammar and logic diverge. In this clause "spaces" is clearly both the grammatical and logical subject of "are completed," the first element of the compound verb phrase "are completed and signed"; but "spaces" is equally clearly *not* the logical subject of the second element, "signed." As not only logic but the wording of the successor statute clearly suggests, the coupling of the participles "completed" and "signed" was at best inadvertent and, in retrospect, so inept as to be disastrous to the effectuation of the statute's remedial purpose.

Neither section (b) nor (c) requires multiple signatures. The statute neither discusses, authorizes nor mentions continuing offer, retrospective or prospective rules of applicability or requirements of any evidentiary burden.

Judge Banke, in his dissent, has quoted Justice Hall in *Walker v. Walker,* 122 Ga. App. 545, 546 (178 SE2d 46) (1970). This latter case discusses the view of flexibility and non-immutability of "common law" comprised partly of principle, policy, power and precedent. It is there further projected that the doctrine of principle and precedent "stare decisis" carries even greater weight when a portion of a statute has been once interpreted. The other two members of the panel did not agree with all the observations of Justice Hall in that case; therefore, it is a one judge opinion as to Division 2 and is not binding precedent. It was arguable then and now that parts of "common law" principles and precedents are unchanging and immutable, although the case sub judice has not obtained this status. When stability and justice, an irresistible force collides with an immovable object, as in this case . . . "then justice prevails." *Hall v. Hopper,* 234 Ga. 625, 632 (216 SE2d 839) (1975).

However imperfectly articulated the statute may be as it now stands, its intent and purpose are clear. It is by these principles that

reasonable persons should be guided. The precedent of *Jones,* supra, should be overruled for all the reasons herein set forth.

I conclude that the trial court erred in granting summary judgment to Mrs. Flewellen and denying summary judgment to Atlanta Casualty Co. Further, I would affirm the grant of summary judgment to Allstate Insurance Co.

BANKE, Judge, dissenting.

1. If the General Assembly intended anything in enacting former Code Ann. § 56-3404b (b), it was to insure that an applicant was made aware of his or her option to purchase more than the minimum PIP coverage, in a manner which would conclusively document his or her election in this regard in case any question later arose concerning it. Perhaps the method devised by the General Assembly was not as elegant as some would like, but this does not make the requirements set forth in the statute unclear. The statute specifically requires that the application "contain separate spaces for the insured to indicate his acceptance [or] rejection of each of the optional coverages" and that "these spaces" be "completed and signed by the prospective insured." Former Code Ann. § 56-3404b (b).

The form signed by Mrs. Flewellen provides a shining example of the type of problem which could have been avoided by compliance with this separate signature requirement. Even a cursory examination of the handwriting on that form reveals that the optional election boxes were checked by a person other than the applicant. Were these check marks made before or after the applicant signed her name at the bottom of the form? She says in her affidavit (R-52) that she did not reject the optional coverages at all. Mr. Christopher, of the insurance agency, says in his affidavit (R-67) that she did. In my mind, this alone creates a genuine material issue of fact for jury determination in her case. Had the form provided for a separate signature to indicate acceptance or rejection of each option, there would be no doubt on the issue.

One cannot avoid noting that the words, "Applicant's Statement—Read Before Signing," appear to be printed in the smallest type commercially available. I had to use a magnifying glass to read it with ease.

The majority concedes that a literal interpretation of the statute requires separate signatures but concludes that such requirement is not reasonable or logical. I disagree. There is clearly a legitimate purpose for drafting the statute in the manner in which it was drafted, and if we decline to accept its plain language then, in effect, we assert license to rewrite any statute in any manner which appears

more reasonable to us. If the majority truly believe that a legislative intent contrary to the plain language of the statute was so clear, why did it take so many pages of majority and concurring opinions to explain it?

Judge Deen points out in his concurring opinion that it would have been practically impossible for the applicant to have written a signature for each option, as the box or line provided for each option was too small. The obvious answer to this is that the applicant did not prepare the form. This was the responsibility of the insurance company, a responsibility which was not carried out in compliance with the statute.

2. Although it may be an exercise in nostalgia, I feel it appropriate to cite the following words of former Justice Hall in *Walker v. Walker,* 122 Ga. App. 545, 546 (178 SE2d 46) (1970): "It is true that 'stare decisis' is a matter of judicial policy rather than judicial power. In this regard the common law is not immutable, but flexible, and upon its own principles adapts itself to varying conditions. However, even those who regard 'stare decisis' with something less than enthusiasm recognize that the principle has even greater weight where the precedent relates to interpretation of a statute. Once the court interprets the statute, 'the interpretation . . . has become an integral part of the statute.' Gulf C. & S. F. R. Co. v. Moser, 275 U. S. 133, 136 (48 SC 49, 72 LE 200); Winters v. New York, 333 U. S. 507, 514 (68 SC 665, 92 LE 840). This having been done, any subsequent 'reinterpretation' would be no different in effect from a judicial alteration of language that the General Assembly itself placed in the statute." See also *Williams v. Ray,* 146 Ga. App. 333, 334 (246 SE2d 387) (1978); *A & A Heating &c. v. Burgess,* 148 Ga. App. 859 (1) (253 SE2d 246) (1979).

For the above reasons, I emphatically and decidedly dissent to the reversal of the trial court's order denying summary judgment to the insurance company in Mrs. Flewellen's case (No. 64501). As the application form at issue in the Van Dyke case (No. 64511) also does not meet the requirements of the statute, I would reverse the grant of summary judgment to the insurance company in that case.

CARLEY, Judge, dissenting.

I respectfully dissent to the majority's judgments in the above cases, which judgments follow from the overruling of *Jones v. State Farm Mut. Auto. Ins. Co.,* 156 Ga. App. 230 (274 SE2d 623) (1980); Writ of certiorari dismissed as improvidently granted, 248 Ga. 46 (280 SE2d 837) (1981). As recognized by the majority, the issues in this case are controlled by the decision of this court in *Jones,* and it is only by overruling *Jones* that the majority can reach the result

indicated by the judgment line. I agree with the majority that "[t]he cardinal rule of statutory construction is to ascertain the intent of the legislature." And, I further agree with the majority that "if the legislative intent is plain and expressed unambiguously, there is no interpretation required before the court executes its sworn duty to enforce the statute." However, I disagree with the majority's determination that the relevant portion of Code Ann. § 56-3404b (b) "is neither clear nor free from ambiguity." In my opinion, *Jones* simply applied the plain, clear and unambiguous meaning of that portion of Code Ann. § 56-3404b (b) which provides that "[e]ach application for a policy of motor vehicle liability insurance sold in this state must contain *separate spaces* for the insured to indicate his acceptance [or] rejection of each of the optional coverages listed in subsection (a) above and no such policy shall be issued in this State unless *these spaces are* completed and *signed* by the prospective insured." (Emphasis supplied.) As did this court in *Jones,* I believe that Code Ann. § 56-3404b (b) "clearly sets out the requirements that the application contain 'separate spaces' and that an applicant's rejection of optional no-fault coverages must be *in writing* as evidenced by his signature on 'separate spaces' " *Jones,* supra, 233.

The motivation for the majority's decision in these cases appears to be its opinion that the interpretation of the statute in *Jones* "defies the rules of logic and reason and blindly applies a rule of literalness." If I were a member of a legislative body, I would be free to be persuaded by the pragmatic arguments advanced by the majority. However, "[w]here the language of a statute consists of common, ordinary words, and there is nothing to show that any unusual meaning is to be attached to the terms employed, it would be going beyond the province of the court, and all recognized limitations upon it in the construction of statutes, to deny to the language employed in the act its ordinary, usual signification, and give it an unusual meaning and a forced or strained significance, *even though such construction would avoid results which might be disastrous* to valuable properties of the species here involved." (Emphasis supplied.) *Standard Steel Works Co. v. Williams,* 155 Ga. 177, 181 (116 SE 636) (1922). See also *Atlanta & West Point R. Co. v. Wise,* 190 Ga. 254, 255 (9 SE2d 63) (1940).

The majority places great reliance upon the fact that in 1982, the General Assembly amended the relevant statutory language to read in the manner the majority would now construe the pre-1982 statute. Implying that this court can and should rely upon the 1982 amendment to hold what the majority feels the *Jones* court should have determined in 1980, the majority cites the following cases: *Forrester v. Interstate Hosiery Mills,* 194 Ga. 863, 866 (23 SE2d 78),

quoting *Barron v. Terrell,* 124 Ga. 1077, 1079 (53 SE 181) and citing *Wingfield v. Kutres,* 136 Ga. 345, 349 (71 SE 474); *Moore v. Ga. Public Service Comm.,* 242 Ga. 182, 184 (249 SE2d 549). None of the cited cases deals with a situation wherein the legislature has reacted to a judicial decision by changing the language so that the statute as amended doesn't say what it said before the judicial decision. It is true that the 1982 change in the statute may be assumed to be deliberate and in response to *Jones. Brown v. Brown,* 184 Ga. 827, 830 (193 SE 754) (1937). However, this does not mean that the 1982 statute should be applied retroactively to "overrule" *Jones* and used as a vehicle to reconstrue *Jones,* the *effect* of which has now been repealed by statute. "[A] statute is not to be construed retroactively in operation unless the language of the statute imperatively requires it." *Jaro, Inc. v. Shields,* 123 Ga. App. 391, 392 (181 SE2d 110) (1971).

It is my opinion that "the language of [Code Ann. § 56-3404b (b)] is plain and subject to only one construction, and in such a case *this court can not hold that the General Assembly did not mean what it said."* (Emphasis supplied.) *Thomas v. Lumbermen's Mut. Cas. Co.,* 57 Ga. App. 434, 436 (195 SE 894) (1938). For the above reasons, I would affirm the trial court in Case No. 64501 and reverse the trial court in Case No. 64511 and, therefore, I respectfully dissent.

I am authorized to state that Chief Judge Quillian, Presiding Judge McMurray and Judge Banke join in this dissent.